Mohammad ALAM, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2635.

Court of Appeals of Alaska.

June 23, 1989.

Charlene A. Lichtmann, Anchorage, for appellant.

Tonja Woelber, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Mohammad Alam was convicted of kidnapping, an unclassified felony, in violation of AS 11.41.300(a)(1)(C). He received a sentence of ten years with five years sus-

pended. Alam appeals. We find that there was insufficient evidence to warrant Alam's conviction for kidnapping and therefore reverse.

J.A. is a thirteen-year-old young woman from the village of Pilot Point. For the past few years, J.A. has lived in Anchorage to attend school during the winter months, and then has returned to Pilot Point for the summers. On October 12, 1987, J.A. was living with her cousin and attending school in Anchorage. She had spent the early evening at the Northern Lights Bingo Parlor with her cousin, but left alone to walk home at about 10:00 p.m. As she was walking along 36th Avenue, she noticed the lights of a car right beside her. It was later determined that the car was driven by the defendant, Mohammad Alam. The car pulled up next to her and moved slowly, matching her pace. Through the open window of the passenger side, the driver asked J.A. whether she needed a ride and stated that he "needed to talk to [her]." J.A. told him she lived right on the corner and was nearly home. The man continued to repeat the questions. J.A. became afraid. Eventually, the car stopped next to her.

J.A. told the driver to leave her alone. At this point, when she began to move forward, the car moved forward, cutting off her movement; when she walked back, the car moved in reverse, blocking her exit. This back and forth movement occurred five or six times. J.A. was also concerned that the driver was trying to bump her with the car. She thus did not feel safe in attempting to walk around it. As the driver blocked her, he continued to ask her to get into his car because he "wanted to talk" to her and wanted to bring her home. As J.A. walked along, she approached a truck that was parked on her side of the street. The driver edged his car up to the truck so that there was no place for J.A. to go.

At this point, J.A. became very frightened and climbed over a fence into the adjacent yard.[1] J.A. initially intended to

1. It is difficult to visualize the fence surrounding the yard into which J.A. escaped from the record presented to us. At trial, the parties

run across the yard and exit on the next street. When she arrived at the gate, however, she found that it was locked. In the meantime, she heard someone chasing her and discovered that Alam had gotten out of his vehicle, climbed over the fence and was in pursuit. Alam grabbed J.A. She feared he might rape her or beat her, and began screaming. Alam grabbed her by the wrist and began to shake her or pull her. It is unclear whether Alam dragged J.A. any significant distance. It is clear that they continued to struggle. J.A. was screaming all of this time. Her screams apparently attracted the attention of people living in neighboring condominiums who came out on their balconies to see what was happening. J.A. heard somebody on the balcony of one of the homes shouting something to her. Alam was apparently frightened by this, and let J.A. go. He then fled. J.A. ran towards the people, but had difficulty getting over the fence because of its height and because the ground was muddy.

At this point, J.A.'s attention was attracted by John Buckley, a neighbor who had come to help her. Buckley persuaded the hysterical J.A. to move along the fence with him until she found a place where she could make her way over the fence. At this point, Buckley and J.A. noticed the defendant driving slowly by them. Buckley took down Alam's license plate number and then J.A. and Buckley went to Buckley's home to call the police. When J.A. and Buckley arrived at Buckley's house, Alam drove in front of the Buckley home, stopped the car, and began to get out of it. Buckley threatened Alam, and Alam rapidly drove away. Buckley overheard Alam calling to J.A. by a name beginning with the letter "M." He heard J.A. say, "I'm not who you think I am." Buckley testified that Alam looked like he had been drinking. It appears undisputed that Alam did not have any weapons, did not strike J.A., did not touch her sexually, did not offer her money or drugs, and said nothing to her of a sexual nature. Alam testified that he thought J.A. was a young woman who had been in his home earlier that night

introduced diagrams and photographs which

and who had become intoxicated. He testified that he attempted to persuade her to get into his car and let him drive her home. He says he left when she became hysterical.

## DISCUSSION

Alam argues that there was insufficient evidence to convict him of kidnapping. In considering such an issue, we must review the evidence in the light most favorable to the state. *Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981). Our task is to determine whether the finding of guilt is supported by substantial evidence. The evidence must support a conclusion by a reasonable mind that there was no reasonable doubt about the defendant's guilt. *Id.* The credibility of witnesses and the weighing of evidence are issues to be determined by the trier of fact. *Brown v. Anchorage*, 680 P.2d 100, 104 (Alaska App.1984).

Alaska Statute 11.41.300 provides in pertinent part:

*Kidnapping.* (a) A person commits the crime of kidnapping if

(1) the person restrains another with intent to

. . . .

(C) inflict physical injury upon or sexually assault the restrained person or place the restrained person or a third person in apprehension that any person will be subjected to serious physical injury or sexual assault[.]

In order to understand this statute, it is necessary to define the term "restrain." Alaska Statute 11.41.370 provides in relevant part:

*Definitions.* [U]nless the context otherwise requires,

. . . .

(3) "restrain" means to restrict a person's movements unlawfully and without consent, so as to interfere substantially with the person's liberty by moving the person from one place to another or by confining the person either in the place where the restriction commences or in a place to which the person has been

are not included in the record on appeal.

moved; a restraint is "without consent" if it is accomplished

. . . .

(B) by force, threat, or deception.

The state argues that Alam restrained J.A. on two occasions: (1) when he impeded her passage along 36th Avenue by blocking her with his vehicle; and (2) when he followed her over the fence, grabbed her by the wrist or arm and struggled with her momentarily. The state recognizes that these actions would not constitute common law kidnapping which required substantial restraint of a victim. The state, nevertheless, argues that our legislature substantially modified the common law, making even a momentary restraint sufficient for a kidnapping conviction.

The state points to differences between the revised code and the tentative draft of the revised criminal code in which the subcommission proposed both an offense of kidnapping and two related lesser offenses: unlawful imprisonment in the first and second degree. *See* Alaska Criminal Code Revision Part I at 58–65 (Tent. Draft 1977).

It appears from the comparison of the appropriate statutes that the drafters wished to model Alaska's kidnapping statutes on those of New York. *See* N.Y.Penal Law § 135 (McKinney 1987). *See also* Alaska Criminal Code Revision Part I at 98 (Tent. Draft 1977). Unlawful imprisonment, according to the tentative draft, would embrace "every type of unlawful restraint ranging from the most sinister kidnapping conduct down to relatively trivial confinements." *Id.* at 63. *See also* Donnino, Practice Commentary to the New York Penal Code § 135 at 616–17 (McKinney 1987).

In the state's view, the subcommission intended kidnapping to be "an aggravated form of unlawful imprisonment as it was at common law." Alaska Criminal Code Revision Part I at 59 (Tent. Draft 1977). While unlawful imprisonment required only "restraint," kidnapping, as envisioned by the subcommission, would require "abduction." *Id.* at 57–58. "Abduction" was defined as a more serious form of restraint, requiring "significant movement of the victim, iso-lation or violence which are popularly associated with the concept of kidnapping." *Id.* at 58. The state emphasizes that the legislature did not adopt the subcommission's distinction between unlawful imprisonment and kidnapping. Instead, the state argues, the scope of kidnapping was expanded to include the proposed lesser offense of unlawful imprisonment. The legislature did this by keeping the subcommission's definition of "restraint," and making "restraint" rather than "abduction," the *actus reus* of kidnapping. *But see* AS 11.41.300(a)(2)(A) and (B) (approximating the earlier tentative draft provisions). In the state's view, this change makes it clear that the legislature, in enacting the revised criminal code, intended that the *actus reus* of kidnapping, "restraint," be co-extensive with that of the common law crime of false imprisonment. Thus, according to the state, the "restraint" sufficient for kidnapping would include even momentary instances of otherwise trivial unlawful confinement.

The state makes a forceful argument, but it overlooks certain ambiguities in the legislature's treatment of the new offense. The legislature published extensive commentary regarding the revised criminal code in 1978. In its commentary, the legislature pointed out:

Kidnapping will occur when the defendant restrains his victim with one of the five intents specified in paragraphs (A)–(E) of subsection (a)(1). The intents describe the most typical kidnapping situations. Note that there is no requirement that the intent actually be carried out.

Commentary on the Alaska Revised Criminal Code, Senate Journal Supp. No. 47 at 18, 1978 Senate Journal.

The legislature went on to include the following particularly instructive language:

Paragraph (E) covers a restraint with intent to facilitate a felony. Movements that are merely incidental to the commission of another crime do not fall within this provision. Holding a person at gunpoint during a robbery, for example, will not be elevated to kidnapping even

though the person's movements are restricted.

*Id.* at 18–19.

In 1980, the legislature amended the kidnapping statute to expressly include restraint with intent to commit a sexual assault as kidnapping. In describing these changes the legislature said:

> This amendment [to AS 11.41.300(a)(1)] clarifies that "restraint" (defined in AS 11.41.370(3)) of a victim with intent to commit a sexual assault is kidnapping. While such conduct is already generally covered under AS 11.41.300(a)(1)(E) [intent to facilitate a felony], it is preferable to specifically prohibit this particularly serious form of conduct in the kidnapping statute.
>
> It should be noted that this amendment would not turn a restraint that was merely incidental to a sexual assault into kidnapping. For example, a defendant who forces a victim who is jogging along a bike path into woods a few feet from the bike path in order to commit a sexual assault has not committed kidnapping. The "restraint" of the victim was too closely related to the sexual assault, both in time and the degree of movement, to qualify as a separate crime. However, if the victim was forced into the defendant's car and then driven a block to a nearby deserted house and sexually assaulted, or sexually assaulted while his accomplice was driving the car, kidnapping has occurred. In this situation the restraint was specifically done to facilitate the commission of the felony and there was significant confinement or movement of the victim beyond that necessary to commit the sexual assault.

(*See generally Levshakoff v. State,* 565 P.2d 504 (Alaska 1977)).[2]

Commentary and Sectional Analysis for the 1980 Amendments to Alaska's Revised Criminal Code, Senate Journal Supp. No. 44 at 5–6, 1980 Senate Journal.

New York, like Alaska, has expressed concern that the term "restrain," if too broadly defined, could turn every robbery, rape, or simple assault into a kidnapping. Its courts, therefore, apply a merger doctrine whereby the kidnapping merges into the other crimes when restraint is merely incidental to their commission. *See, e.g., People v. Rios,* 60 N.Y.2d 764, 469 N.Y.S.2d 670, 671, 457 N.E.2d 776, 777 (1983); *People v. Geaslen,* 54 N.Y.2d 510, 446 N.Y.S.2d 227, 229, 430 N.E.2d 1280, 1282 (1981); *People v. Cassidy,* 40 N.Y.2d 763, 390 N.Y.S.2d 45, 47–48, 358 N.E.2d 870, 872–74 (1976). The merger doctrine does not apply, however, where kidnapping is the only crime charged. *See Rios,* 469 N.Y.S.2d at 671, 457 N.E.2d at 777.

The language in the senate commentaries to the kidnapping statute makes it clear to us that the Alaska legislature intended dismissal to be the proper remedy where kidnapping was charged, but it was apparent that any "restraint" was incidental to the commission of some other offense, whether that offense be robbery or sexual assault. It is not necessary for us to attempt to clearly establish the parameters which will always separate a kidnapping based on intent to commit a sexual assault from an underlying sexual assault or attempted sexual assault. Nor is it necessary to clearly define when a fourth-degree misdemeanor assault blossoms into a kidnapping. It is sufficient to say that if

---

**2.** Levshakoff entered a police station, kidnapped a police clerical person, threatened her with a knife, forced her into her automobile, and ordered her to drive approximately ten miles out of town, where he sexually assaulted her, threatening to kill her at all times. He then required her to drive the car further, looking for a place to continue his sexual assaults. While the vehicle was traveling approximately forty miles per hour, the victim jumped out, knocking herself unconscious. Levshakoff stopped the car and, when the victim regained consciousness, menaced the victim with a knife, at which point third persons intervened and Levshakoff was arrested. *Levshakoff,* 565 P.2d at 505–06. Levshakoff argued that Alaska's former kidnapping statutes were unconstitutionally vague and overbroad because they would permit trivial movement incidental to other offenses to be aggravated into kidnapping. The court noted that the Alaska statutes had not been arbitrarily enforced in the past and that Levshakoff's conduct clearly would constitute kidnapping under the narrowest of definitions. The court therefore declined to invalidate the statute. *Id.* at 507–08.

we assume, *arguendo*, that the state proved that Alam intended to sexually or physically assault J.A., any restraint he imposed upon her was merely incidental to that purpose under the facts of this case, construed most favorably to the state. The trial court therefore erred in denying Alam's motion for judgment of acquittal on the charge of kidnapping.

In reaching this conclusion, we stress that we would probably reach the same result even if we accepted the state's argument that the legislature intended common law false imprisonment, accompanied by felonious intent, to constitute kidnapping under existing law.[3] The Restatement (Second) of Torts § 36 (1965) provides:

What constitutes confinement

(1) To make the actor liable for false imprisonment, the other's confinement within the boundaries fixed by the actor must be complete.

(2) The confinement is complete although there is a reasonable means of escape, unless the other [the victim] knows of it.

(3) The actor does not become liable for false imprisonment by intentionally preventing another from going in a particular direction in which he has a right or privilege to go.

The commentary to this section provides in part:

On the other hand, it is unreasonable for one whom the actor intends to imprison to refuse to utilize a means of escape of which he is himself aware merely because it entails a slight inconvenience or requires him to commit a technical invasion of another's possessory interest in land or chattels which subjects him at most to the risk of an action for nominal damages which in practice is seldom if ever brought.

Restatement (Second) of Torts § 36 comment a (1965).

Alam intentionally prevented J.A. from walking unmolested on 36th Avenue. She escaped him by climbing the fence and entering the back yard of an adjacent residence. He pursued her and grabbed her by the wrist, but she continued to struggle, attracted the attention of bystanders, and obtained her release relatively quickly. Under the circumstances, it is arguable that there was never a time during which J.A. was totally under the control of Alam or submitted to the domination of Alam. Consequently, she would never have been completely "confined within the boundaries fixed by [Alam]."

■ The jury in this case was instructed on two lesser-included offenses: attempted kidnapping and assault in the fourth degree. The parties have not argued the appropriateness, if the kidnapping conviction is reversed, of entering judgment on one of these lesser-included offenses on remand. We therefore conclude that that issue should first be considered by the trial court. The trial court has authority, if the state so requests and the defendant would not be unfairly prejudiced, to order the entry of judgment of conviction on one of the lesser-included offenses. Before doing so, the trial court must be satisfied that the jury must have convicted Alam of the lesser offense in order to have convicted him of kidnapping. *See, e.g., Nix v. State*, 624 P.2d 823, 825 (Alaska App.1981).[4]

---

3. It is not necessary for us to decide that issue in this case. We note, however, that it is possible that the legislature's commentary, excluding from the definition of kidnapping restraint incidental to the commission of other felonies, might prevent some common law false imprisonments from qualifying as kidnapping. As we have noted, New York reaches the same result where more than one felony is charged by use of the merger doctrine.

4. We recognize that the jury's invalid verdict of guilty on the kidnapping charge may not have encompassed a valid verdict of guilty on attempted kidnapping. It is not clear that the jury understood that restraint that was merely incidental to a sexual or physical assault could not constitute kidnapping or attempted kidnapping. The state argues that the jury had to find that Alam did not intend to molest J.A. at the scene, but rather intended to force her into his car and take her to another location and assault her there. If the jury found in conformity with the state's theory, it is possible that Alam was necessarily convicted of attempted kidnapping. Resolution of the question will require the parties to review the jury instructions and the arguments of counsel. The trial court will then be in a position to decide the issue.

The judgment of the superior court is REVERSED.