**Leonard P. HURD, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–7571.**

Court of Appeals of Alaska.

April 13, 2001.

Alan J. Hooper and Gloria Hanssen, Hooper & Hanssen, Fairbanks, for Appellant.

Ben M. Herren, Assistant Attorney General, Office of Special Prosecutions and Ap-

peals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and
MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

In this appeal, we are asked to clarify the relationship between the crimes of coercion and kidnapping. The State alleges that Leonard P. Hurd committed both of these crimes. According to the State's evidence, Hurd invited another man to his house and then held him captive, refusing to let him leave until he agreed to transfer thousands of dollars of property to Hurd. The question is whether Hurd's restraint of the other man will support a separate conviction for kidnapping or whether, instead, this restraint should be deemed "incidental" to the crime of coercion. We conclude that if the State's evidence is believed, Hurd's restraint of the other man exceeded whatever restraint might be incidental to the crime of coercion, and thus the State's evidence will support Hurd's separate conviction for kidnapping.

*The State's allegations, and a brief procedural history of this case*

The State alleges that Leonard P. Hurd invited Dennis Schlotfeldt to his house and then held him captive for thirty to forty-five minutes. It appears that Hurd owed Schlotfeldt several thousand dollars. According to the State's evidence, Hurd refused to let Schlotfeldt leave the house until he signed documents (1) acknowledging full satisfaction of Hurd's debt, (2) transferring several parcels of land to Hurd, (3) agreeing to give Hurd $25,000 in cash, and (4) acknowledging that he had received a non-existent coin collection from Hurd valued at a quarter of a million dollars.

Based on this evidence, the State indicted Hurd for coercion, third-degree assault, and kidnapping.[1] Hurd was tried by jury in the superior court and convicted of all three charges. He now appeals his kidnapping conviction.

*Hurd's attack on his kidnapping conviction, and the State's partial concession of error*

Hurd argues that even if all of the State's allegations are true, he committed assault and coercion but he did not commit kidnapping. Hurd's argument is based on the narrowing construction of the kidnapping statute that this court adopted in *Alam v. State*.[2]

Modern kidnapping statutes—such as Alaska's—define the crime of kidnapping fairly broadly. For example, under Alaska's kidnapping statute, a defendant commits kidnapping if they restrain another person with the intent to facilitate the commission of any felony, or to facilitate flight from the commission of any felony.[3] The scope of the kidnapping statute is further broadened by the definition of "restrain" contained in AS 11.41.370(3). Under this statute, "restrain" means:

> to restrict a person's movements unlawfully [by force, threat, or deception], so as to interfere substantially with the person's liberty[,] by moving the person from one place to another or by confining the person either in the place where the restriction commences or in a place to which the person has been moved[.]

Given the broad scope of the kidnapping statute, one might argue that almost any assaultive crime includes at least a momentary "kidnapping"—thus potentially allowing the State to seek a 99-year sentence for almost any assaultive felony.[4] This was the legal problem that this court addressed in *Alam*.

In *Alam*, we concluded that the legislature's commentary to the kidnapping statute demonstrated that the legislature did not

---

1. AS 11.41.530(a) (coercion); AS 11.41.220(a) (third-degree assault); AS 11.41.300(a) (kidnapping).

2. 776 P.2d 345 (Alaska App.1989) (*Alam I*), appeal after remand, 793 P.2d 1081 (Alaska App. 1990) (*Alam II*).

3. AS 11.41.300(a)(1)(E).

4. *See Alam I*, 776 P.2d at 349. The maximum penalty for kidnapping is 99 years' imprisonment. *See* AS 12.55.125(b).

wish the kidnapping statute to be interpreted as broadly as its literal wording might suggest. In its commentary, the legislature declared that "[m]ovements that are merely incidental to the commission of another crime" will not constitute kidnapping:

Holding a person at gunpoint during a robbery, for example, will not be elevated to kidnapping even though the person's movements are restricted.

*Alam I*, 776 P.2d at 348–49 (quoting 1978 Senate Journal, Supp. No. 47 (June 12), pp. 18–19).

When the legislature amended the kidnapping statute in 1980, they adopted additional commentary which again emphasized that a restraint would not be deemed a kidnapping if it was "merely incidental" to the target crime:

For example, a defendant who forces a victim who is jogging along a bike path into woods a few feet from the bike path in order to commit a sexual assault has not committed kidnapping. The "restraint" of the victim was too closely related to the sexual assault, both in time and the degree of movement, to qualify as a separate crime.

*Alam I*, 776 P.2d at 349 (quoting 1980 Senate Journal, Supp. No. 44 (May 29), p. 5).

Based on this legislative commentary to the kidnapping statute, we held in *Alam* that when a defendant restrains a victim to facilitate the commission of another offense, this restraint will not constitute a kidnapping if it is merely "incidental" to the commission of the other offense.[5] As we clarified in *Alam II*, to support a separate conviction for kidnapping, the defendant's restraint of the victim must exceed "either [temporally] or spatially . . . what was necessary to commit [the ulterior crime]".[6]

Hurd contends that, if we apply this rule to the facts of his case, he can not properly be convicted of kidnapping. Hurd points out that, even under the State's theory of the case, he held Schlotfeldt captive only long enough to accomplish the target crime—coercing Schlotfeldt to sign the documents that absolved Hurd's debt and that conveyed money and property to Hurd. Once these documents were signed, Hurd released Schlotfeldt. This being so, Hurd argues, his restraint of Schlotfeldt was merely incidental to the crime of coercion, and the trial judge should have granted him a judgement of acquittal on the kidnapping charge.

Hurd also argues that even if the State's evidence was conceivably sufficient to support a kidnapping conviction, his conviction should nevertheless be reversed. Hurd points out that neither the grand jury nor the trial jury was instructed that, in order for Hurd's restraint of Schlotfeldt to constitute a kidnapping, that restraint had to exceed "either [temporally] or spatially . . . what was necessary to commit" the crime of coercion. Because neither jury made a finding on this necessary element of the kidnapping charge, Hurd contends that his conviction must be reversed and his indictment thrown out.

The State concedes that the trial jury was not adequately instructed on the type or degree of restraint needed to establish the offense of kidnapping, and thus the State concedes that Hurd's conviction must be reversed. Having reviewed the record, we conclude that the State's concession is well-founded.[7]

However, the State contends that its evidence was sufficient to support a kidnapping conviction if the jury had been correctly instructed. We therefore must decide whether the evidence presented at Hurd's trial (viewed in the light most favorable to the State) was sufficient to establish that Hurd's restraint of Schlotfeldt was more than "merely incidental" to Hurd's target crime of coercion.

Also, although the State concedes that the grand jury did not receive adequate instruction on the type or degree of restraint need-

---

5.  *Alam I*, 776 P.2d at 349.

6.  793 P.2d at 1083–84.

7.  *See Marks v. State*, 496 P.2d 66, 67–68 (Alaska 1972) (an appellate court must not accept the State's concession of error in a criminal case without independently verifying that the concession is well-founded).

ed to establish the offense of kidnapping, the State argues that the grand jurors undoubtedly would have indicted Hurd for kidnapping if they had been correctly instructed. Thus, the State contends, the flaw in the grand jury instructions does not require dismissal of the kidnapping count of the indictment. Accordingly, even if we decide that the trial evidence was sufficient to support a kidnapping conviction, we must then also decide whether the State should be required to reindict Hurd if they wish to retry him for kidnapping.

*When is restraint "incidental" to a target crime?*

*Alam* declares that when a defendant restrains a victim to facilitate the commission of a felony, this restraint will not constitute a kidnapping if the restraint is only "incidental" to the target felony. But judges who try to apply this rule—or who try to formulate a jury instruction to help jurors apply this rule—soon encounter a problem.

In *Alam,* we expressly declined to "establish the parameters" for distinguishing an incidental restraint from a kidnapping when the defendant's target crime is sexual assault.[8] We simply declared that, under the facts of *Alam,* "any restraint ... imposed upon [the victim] was merely incidental" to the defendant's attempt to sexually assault her.[9]

Thus, the *Alam* decision declared the proper result for the particular facts presented in that case, but it provided little guidance for courts presented with different cases. *Alam* did not specify the factors that a court should consider when assessing whether a restraint is merely "incidental" to the defendant's target crime. Because these factors remained unidentified, the term "incidental" remained more a label to describe a result than an analytical tool that could be used to decide other cases.

Our decision in *Alam II* is somewhat more helpful. In *Alam II,* we paraphrased "incidental" and thus potentially fleshed out the meaning of that term. We declared that, in

order to convict a defendant of *attempted* kidnapping, the State would have to prove that the defendant "intended to restrain [the victim] either temporarily [sic: "temporally"] or spatially beyond what was necessary to commit sexual or physical assault."[10] From this description of attempted kidnapping, it follows that the completed crime of kidnapping would be proved if the defendant actually restrained the victim either temporally or spatially beyond what was necessary to commit the target assault.

But even this formulation of the test remains ambiguous. *Alam II* directs a court or a jury to assess whether the defendant's restraint of the victim exceeded, either temporally or spatially, the type or degree of restraint necessary to commit the target crime. This leaves the question: what type or degree of restraint is "necessary" to commit a crime?

Hurd argues that, even under the State's evidence, he restrained Schlotfeldt no more than was necessary to get Schlotfeldt to sign the documents, and thus the restraint was merely incidental to the coercion. But the State argues that Hurd's analysis begs the question.

*The State's argument that the Alam rule does not apply when the defendant's target crime is coercion*

The State argues that the *Alam* test should not apply when a defendant is charged with coercion. That is, the State contends that any restraint of a coercion victim, no matter how minimal, can support a separate kidnapping conviction. According to the State, this is because coercion (unlike robbery or rape) is not a crime that inevitably involves restraint of the victim.

The State points out that it is possible to commit the crime of coercion without restraining the victim at all. For example, under AS 11.41.530(a)(1), coercion consists of compelling another person to engage in conduct (or to abstain from conduct) by threatening to commit a crime if the person fails to

---

**8.** *Alam I,* 776 P.2d at 349.

**9.** *Id.* at 350.

**10.** *Alam II,* 793 P.2d at 1083–84.

comply with one's demands. No restraint is necessary to communicate a threat. A threat can be communicated in the victim's home or place of business; it can be communicated in a public place such as a park; it can be communicated by telephone or letter or e-mail.

Likewise, restraint is generally not needed to obtain the victim's compliance with the defendant's demand. Coercion is similar to extortion: generally speaking, the victim's impetus for complying with the defendant's demand is the desire not to be subjected to another criminal act or an embarrassing disclosure in the unspecified future. Moreover, in many instances, the nature of the defendant's demand is such that the victim of coercion would be unable to comply with the demand unless the victim were free to leave.

Because the crime of coercion can be committed without restraining the victim, the State argues that coercion is fundamentally different from the crimes of robbery and sexual assault that figured so prominently in the *Alam* court's analysis. With rare exceptions, robbery and sexual assault can not be committed without restraining the victim to some degree. But restraint is not inevitably incidental to the commission of coercion. Thus, the State contends that when a defendant uses *any* restraint to accomplish coercion, the defendant can properly be convicted of kidnapping as well.

There is case law from other jurisdictions that supports the State's position that the *Alam* rule applies only to robbery, sexual assault, and other assaultive crimes that almost inevitably involve some degree of restraint. For example, in *People v. Wesley*[11], the Michigan Supreme Court held that a defendant should not be convicted of kidnapping for committing a restraint that is merely incidental to a rape, robbery, or other assault. At the same time, however, the Michigan court held that when the defen-

dant's target crime was murder or extortion, *any* restraint would support a conviction for kidnapping—because such crimes do not inevitably involve restraint.[12]

In Alaska, the crime of coercion is essentially a lesser degree of extortion.[13] Thus, following the Michigan court's rationale, any restraint that a defendant might employ to facilitate the crime of coercion would suffice to establish the separate crime of kidnapping. Based on this reasoning, the State asks us to rule that *Alam* is inapplicable to Hurd's case.

We note that the State's argument on this point is inconsistent with the State's concession of error on the jury instruction issue—for if the State is correct that the *Alam* rule does not apply when a defendant's target crime is coercion, there would have been no need to give Hurd's jury (or grand jury) any special kidnapping instruction beyond explaining the elements of the crime as they are defined in AS 11.41.300(a). However, we are willing to overlook this inconsistency in the State's arguments because we conclude that Hurd's case does not require us to decide whether *Alam* applies to all crimes or only some. As we explain in the next section of this opinion, the State's evidence was sufficient to support a separate kidnapping conviction even under the *Alam* rule. We therefore decline to resolve the further issue of whether the *Alam* rule is inapplicable when the defendant's target crime is coercion—and we accept the State's concession of error on the jury instruction issue for the limited purpose of deciding Hurd's appeal.

*The State's evidence was sufficient to support a kidnapping conviction under the Alam rule*

We now turn to the State's alternate argument that, even if the *Alam* rule applies to all target crimes including coercion, any significant movement or confinement of a victim

---

11.   421 Mich. 375, 365 N.W.2d 692 (1984).

12.   *See id.* at 696–97. *Accord, People v. Adams,* 389 Mich. 222, 205 N.W.2d 415, 422 (1973). See also *State v. Prevette,* 317 N.C. 148, 345 S.E.2d 159, 165 (1986), where the court "recognize[d] the fact that murder is not within that class of felonies, such as forcible rape and armed

robbery, which cannot be committed without some restraint of the victim."

13.   *See* the commentary to the coercion statute, AS 11.41.530. This commentary is found in 1978 Senate Journal, Supp. No. 47 (June 12), p. 29.

during the commission of the target crime will support a separate conviction for kidnapping. This argument finds support in cases from other states. For example, in *State v. St. Cloud*[14], the South Dakota Supreme Court held that significant movement or confinement of a sexual assault victim can support a kidnapping conviction:

> Neither movement nor prolonged confinement of the victim is an essential element of first-degree rape under [our statute]. Moreover, most movement of rape victims by their attackers is designed to seclude the victim from possible assistance and to prevent escape—[conduct] which inevitably increases the risk of harm to the victim.
>
> We read [our prior cases] merely to say that a kidnapping may be incidental to another crime when the kidnapping consists either of confinement of minimal duration or of minimal movement within the same premises. Where, however, the kidnapping consists of prolonged confinement or movement from one premises to another—even if only from a parked car to an abandoned house—then ... the kidnapping cannot be considered incidental to another crime.

*St. Cloud,* 465 N.W.2d at 181.

■ We note that the South Dakota court's formulation of the test is similar to the wording we used in *Alam II:* a defendant's restraint of a victim can support a separate conviction for kidnapping when that restraint either temporally or spatially exceeds what was necessary to commit the target assault.[15]

However, there is also case law from other states to support Hurd's position that even a significant restraint can be "incidental" to a target crime. Hurd particularly relies on a series of New York cases that apply what has become known as the *Levy–Lombardi* rule. In *People v. Levy*[16], the New York Court of Appeals reversed the kidnapping conviction of a defendant who held two people at gunpoint and forced them to accompany him on a twenty-minute drive while he robbed them. The New York court concluded that Levy should not be punished for kidnapping because

> [i]t is a common occurrence in robbery ... that the victim be confined briefly at gunpoint or bound and detained, or moved into ... another room or place. It is unlikely that these restraints, sometimes accompanied by asportation, which are incident[ ] to ... and have long been treated as integral parts of other crimes, were intended by the Legislature ... to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory [definition of kidnapping].

*Levy,* 204 N.E.2d at 844, 256 N.Y.S.2d at 796.

In *People v. Lombardi*[17], the New York Court of Appeals reached a similar result in a kidnapping / rape case in which the victims were drugged and then driven across town to a motel, where they were sexually assaulted. The court concluded that the defendant's asportation of the victims did not constitute a kidnapping, for the kidnapping statute was "not [intended] to apply ... to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident." [18]

Hurd urges us to follow the *Levy–Lombardi* rule and to grant him a judgement of acquittal on the kidnapping charge. Hurd argues that even if he held Schlotfeldt captive for upwards of an hour, the evidence undisputedly shows that he employed this restraint only to facilitate his target crime of coercion, and that he released Schlotfeldt as soon as the coercion was complete (*i.e.,* as soon as Schlotfeldt signed the documents). Hurd contends that, under the *Levy–Lombardi* rule, the gist of his criminal conduct remained coercion, and Schlotfeldt's confinement was only a subsidiary incident of that coercion.

---

14.   465 N.W.2d 177 (S.D.1991).

15.   *Alam II,* 793 P.2d at 1083–84.

16.   15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842 (1965).

17.   20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967).

18.   *Id.,* 229 N.E.2d at 208, 282 N.Y.S.2d at 521.

But after considering the matter, we conclude that we can not adopt the *Levy–Lombardi* rule. This rule is inconsistent with the Alaska Legislature's commentary to the kidnapping statute, and it is also inconsistent with past decisions of this court.

As explained above, when the legislature amended the kidnapping statute in 1980, they also approved an accompanying commentary. This commentary reiterates the legislature's intention to narrow the potential reach of the kidnapping statute. With respect to the target crime of sexual assault, this commentary declares that the kidnapping statute should not be construed "[to] turn a restraint that was merely incidental to a sexual assault into kidnapping".[19]

To illustrate this principle, the 1980 commentary states that no kidnapping is committed when a rapist forces a jogger off a bike path and a few feet into the woods. But the commentary then gives a counter-example— *i.e.*, an example of what the legislature believed to be a true kidnapping—that is clearly inconsistent with the *Levy–Lombardi* rule:

> However, if the victim was forced into the defendant's car and then driven a block to a nearby deserted house and sexually assaulted, or sexually assaulted [in the car] while [the defendant's] accomplice was driving the car, kidnapping has occurred. In this situation[,] the restraint was specifically done to facilitate the commission of the felony and there was significant confinement or movement of the victim beyond that necessary to commit the sexual assault. (*See generally Levshakoff v. State*, 565 P.2d 504 (Alaska 1977).)

1980 Senate Journal, Supp. No. 44 (May 29), p. 6.

The *Levy–Lombardi* rule is also inconsistent with prior decisions of this court. In *Walker v. State*[20], this court upheld separate convictions and sentences for kidnapping and robbery when the defendant forced his two victims into a car at gunpoint and then drove them to a bank, where one of the victims was forced to withdraw money from her account.[21] And in *Lacy v. State*[22], this court upheld separate convictions and sentences for kidnapping and rape when the defendant entered the victims' car and, while holding them at gunpoint, forced them to drive to a sparsely populated section of the city, where he then raped one and attempted to rape the other.[23]

■ For these reasons, we reject Hurd's invitation to adopt the *Levy–Lombardi* line of cases. As demonstrated both by the legislature's commentary to the kidnapping statute and by this court's decisions applying that statute, if the defendant's restraint of a victim is significant enough, that restraint can constitute the independent crime of kidnapping even though the restraint might simply be part of the defendant's plan for committing the target crime.

*How should a jury be instructed on this issue?*

■ Our decisions in *Alam I* and *Alam II* establish that when a defendant is charged with kidnapping in conjunction with another target crime, the jury must decide whether the defendant's restraint of the victim was more than "incidental" to the target crime. However, as explained above, neither *Alam I* nor *Alam II* provides specific guidance to trial court judges who must craft the required jury instruction on this issue. *Alam II* contains our most pertinent statement on this question: we said that, in order to support a separate conviction for kidnapping, the defendant's restraint of the victim must exceed "either [temporally] or spatially … what was necessary to commit [the target crime]".[24] But even this formulation of the test fails to answer the question: what type or degree of restraint is "necessary" to commit a crime?

**19.** 1980 Senate Journal, Supp. No. 44 (May 29), p. 6.

**20.** 674 P.2d 825 (Alaska App.1983).

**21.** *See id.* at 827, 833.

**22.** 608 P.2d 19 (Alaska 1980).

**23.** *See id.* at 20, 23.

**24.** 793 P.2d at 1083–84.

In *State v. Stouffer*[25], the Maryland Court of Appeals declared that when a court assesses whether a restraint is "incidental" to the defendant's target crime, the court should examine (1) how long the victim was restrained; (2) if the victim was moved, how far the victim was moved and where the victim was taken; (3) whether, under the facts, the restraint exceeded what was necessary for commission of the defendant's target crime; (4) whether the restraint significantly increased the risk of harm to the victim beyond the risk of harm inherent in the target crime itself; and (5) whether the restraint had some independent purpose—*i.e.*, whether the restraint made it significantly easier for the defendant to commit the target crime or made it significantly easier for the defendant to escape detection.[26] Several other jurisdictions have adopted similar tests.[27]

We believe that these factors are appropriate indicators of whether a defendant's restraint of a victim will support a separate conviction for kidnapping or whether, instead, that restraint is merely incidental to the defendant's commission of the target crime. A jury instruction that asks the jurors to evaluate these factors—supplemented, perhaps, by the examples provided by the legislature in its commentary to the kidnapping statute—will satisfy the requirements of *Alam.*

These same factors should be weighed by the trial judge when a defendant seeks a judgement of acquittal on a kidnapping charge. We therefore now assess the evidence presented in Hurd's case using the test we have just formulated.

*Should the superior court have granted Hurd's motion for a judgement of acquittal on the kidnapping charge?*

■ The indictment against Hurd alleges that he committed the crime of coercion under AS 11.41.530(a)(1) by "threatening to inflict physical injury on Dennis Schlotfeldt" and thereby "compell[ing] . . . Schlotfeldt to engage in conduct from which [he had] a legal right to abstain, to wit: the signing of a contract promising to transfer money and real property to [Hurd]". The jury found Hurd guilty of this charge, and Hurd has not challenged his coercion conviction. The question is whether, when the evidence is viewed in the light most favorable to the State, Hurd's conduct also constituted the separate crime of kidnapping.

The crime of coercion requires only a conditional threat of *future* harm. Under AS 11.41.530(a)(1), the crime is committed when the defendant compels a victim to engage in (or refrain from) conduct by "instilling in the [victim] . . . a fear that, if the [defendant's] demand is not complied with, the [defendant] or another [person] may inflict physical injury on anyone". Thus, Hurd would have committed coercion if he had merely threatened to injure Schlotfeldt at some unspecified future time if he did not sign the documents. But the State presented evidence that Hurd engaged in the present use of force to hold Schlotfeldt in captivity—threatening Schlotfeldt with immediate injury if he tried to leave Hurd's house without signing the documents. Viewing this evidence in the light most favorable to the State, Hurd's conduct—in particular, his restraint of Schlotfeldt—far exceeded the *actus reus* of coercion. Indeed, under the State's evidence, Hurd's conduct closely resembled a traditional kidnapping in which the victim is held captive until a ransom is paid.

When we assess the State's evidence in light of the five factors outlined in the previous section of this opinion, we conclude that this evidence (if believed) was sufficient to support Hurd's conviction for kidnapping. The State presented evidence that Hurd restrained Schlotfeldt for thirty to forty-five minutes, a restraint that far exceeded whatever minimal restraint might conceivably be inherent in the crime of coercion. Moreover,

**25.** 352 Md. 97, 721 A.2d 207 (1998).

**26.** *See id.* at 215.

**27.** *See People v. Moreland*, 292 Ill.App.3d 616, 226 Ill.Dec. 814, 686 N.E.2d 597, 600–01 (1997); *State v. Farmer*, 191 W.Va. 372, 445 S.E.2d 759, 764 (1994); *State v. St. Cloud*, 465 N.W.2d 177, 181 (S.D.1991); *United States v. Howard*, 918 F.2d 1529, 1535–36 (11th Cir.1990); *State v. LaFrance*, 117 N.J. 583, 569 A.2d 1308, 1312–13 (1990); *Government of the Virgin Islands v. Berry*, 604 F.2d 221, 227 (3rd Cir.1979).

viewing the facts of this restraint in the light most favorable to a kidnapping conviction, the restraint also significantly increased the risk of harm to Schlotfeldt, for Schlotfeldt was trapped inside Hurd's house and was at his mercy. Finally, again viewing the evidence in the light most favorable to the State, Schlotfeldt's isolation inside Hurd's house made it significantly easier for Hurd to coerce Schlotfeldt into signing the documents that conveyed Schlotfeldt's property to Hurd. For these reasons, the superior court correctly denied Hurd's motion for a judgement of acquittal on the kidnapping charge.

*Does the flaw in the grand jury instructions require dismissal of the kidnapping count of the indictment?*

■ As explained above, the State concedes that the grand jury was not instructed that kidnapping requires proof of a restraint over and above the restraint that would be merely incidental to the defendant's target crime. At the same time, however, the State asserts that the kidnapping count of the indictment need not be dismissed. The State argues that had the grand jurors received the correct instructions, they undoubtedly would have found sufficient grounds to indict Hurd for kidnapping.

The State's position is supported by our decision in *Wood v. State.*[28] In *Wood,* the grand jury was incorrectly instructed on the elements of sexual assault. (Specifically, the grand jurors were not told that the State was obliged to prove that the defendant recklessly disregarded the victim's lack of consent.) Nevertheless, we upheld the indictment for two reasons: first, because Wood never filed a pre-trial motion to dismiss the indictment, and second, because "given [the victim's] testimony that Wood literally beat her into submission, it is unlikely that the grand jury would have refused to return an indictment even if it had been properly instructed that Wood's reckless disregard of [the victim's] lack of consent was an element of the offense."[29]

We reach a similar conclusion in Hurd's case. The State's evidence at grand jury showed that Hurd restrained Schlotfeldt far more than was "merely incidental" to Hurd's target crime of coercion. In light of the State's grand jury evidence, it is unlikely that the grand jury would have refused to indict Hurd for kidnapping even if they had been properly instructed on the concept of "incidental" restraint. We therefore uphold the kidnapping count of the indictment.

*Conclusion*

The State has conceded that Hurd's kidnapping conviction must be reversed because the trial jury was not adequately instructed on the crime of kidnapping—*i.e.,* they were not told that a defendant is not guilty of kidnapping if the defendant's restraint of the victim was merely incidental to the defendant's commission of a different target crime. We accept the State's concession of error, and we therefore REVERSE Hurd's kidnapping conviction.

However, we conclude that the State's evidence, if believed, will support Hurd's conviction for kidnapping. The trial judge was therefore correct when he refused to grant Hurd a judgement of acquittal on the kidnapping charge. The State may try Hurd again for this crime.

Additionally, we uphold the kidnapping count of the indictment. The State need not reindict Hurd.

---

**28.** 736 P.2d 363 (Alaska App.1987).

**29.** *Id.* at 367.