David MIDDLETON II, Appellant,

v.

STATE of Alaska, Appellee.

No. A–9633.

Court of Appeals of Alaska.

July 20, 2007.

Sharon Barr, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

MANNHEIMER, Judge.

David Middleton II was charged with kidnapping and first-degree robbery, based on allegations that he and two accomplices robbed a pizza delivery person at gunpoint, then forced the victim into a car and drove the victim around the block, attempting to convince the victim to deliver one more pizza and then surrender the purchase money to them.

Middleton defended these charges by asserting that the whole episode was devised by the pizza delivery person, Burim Limani. According to Middleton, Limani wanted to steal money from his employer, so he enlisted Middleton and his friends to make it look as if the money had been taken during a robbery.

The jury rejected this defense and convicted Middleton of both charges. Middleton now appeals.

As explained in more detail below, Middleton contends that the jury returned an inconsistent verdict on the kidnapping charge. Middleton further contends that his robbery conviction should be set aside because the trial judge refused to instruct the jury on the lesser offense of third-degree theft.

For the reasons given here, we conclude that the jury's verdicts regarding the kidnapping charge were not inconsistent, and we also conclude that Middleton was not entitled to have the jury instructed on third-degree theft. We therefore uphold both of Middleton's convictions.

*The jury's decision on the kidnapping charge*

According to the State's evidence, Middleton approached Limani in a parking lot. Middleton was holding a handgun, and he demanded that Limani turn over his money. Then, after Limani surrendered approximately $90 in cash to Middleton, Middleton pointed the gun at Limani and ordered him to get into a car, where his two accomplices were waiting. The robbers drove Limani around in the car for a short while, and then they returned him to the parking lot. At this point, Middleton instructed Limani to deliver another pizza and then turn the money over to them. Limani refused to do this. Instead, Limani told Middleton and his accomplices to just take the pizza. Apparently, Middleton and his friends were not in the

mood for pizza; they simply drove away (without the extra money or the pizza).

At trial, the defense attorney argued that Middleton's act of forcing Limani into the car and then driving him around for a short time was so incidental to the robbery that it could not legally support a separate conviction for kidnapping.

This Court's decision in *Hurd v. State*, 22 P.3d 12 (Alaska App.2001), contains an extensive discussion of the law on this point. *See Hurd*, 22 P.3d at 13–15 & 18–19. In particular, the *Hurd* decision lists five factors that juries must consider when deciding whether an act of restraint committed during an assaultive felony can support a separate conviction for kidnapping, or whether that act of restraint should be deemed merely "incidental" to the accompanying felony. *Id.* at 19.

Middleton's jury received an instruction—Instruction Number 17—based on the five *Hurd* factors. This instruction told the jurors that, before Middleton could lawfully be convicted of kidnapping, the State had to prove that Middleton "restrained" Limani—and that, in this context, the word "restrained" meant "restrained the victim for a period of time[,] or moved the victim a greater distance[,] than was necessary to accomplish the target crime [of robbery]".

Instruction 17 then continued by quoting the five *Hurd* factors:

In making [this] decision[,] you may consider the following factors:

1) how long the victim was restrained;

2) if the victim was moved, how far and where the victim was taken;

3) whether, under the facts, the restraint exceeded what was necessary for the commission of the defendant's target crime;

4) whether the restraint significantly increased the risk of harm to the victim beyond the risk of harm inherent in the target crime itself; and

5) whether the restraint had some independent purpose, for example, whether the restraint made it significantly easier for the defendant to commit the target crime or made it significantly easier for the defendant to escape detection.

(Quoting *Hurd*, 22 P.3d at 19.)

During the jury's deliberations, the jurors asked a series of questions indicating that they were having difficulty deciding whether Middleton's restraint of Limani qualified as a separate offense of kidnapping. Then, toward midday on the third day of deliberations, the jurors sent a note to the court which read:

We agree that the condition of restraint was met. [However, we] can not agree that [the] restraint was intended to facilitate [Middleton's] flight. [Is it sufficient that] the victim was restrained before or after the robbery[?]

Superior Court Judge Philip R. Volland answered this question by directing the jurors to Instructions 17 and 18. (We have already quoted Instruction 17. Instruction 18 contained the basic definition of "restrain".) Judge Volland then continued:

If you agree that the condition of restraint was met as defined in these instructions, then the restraint [required for kidnapping] can occur before or after the [accompanying] felony so long as you find that [this] restraint was with the intent to facilitate the commission of the felony.

About an hour and a half later, the jurors announced that they had reached a verdict. (The jury had, in fact, found Middleton guilty of both kidnapping and robbery.)

After the jurors announced that they had reached a decision, but before the jury's verdicts were announced in court, Middleton's attorney asked Judge Volland to submit a special interrogatory to the jurors in the event that they found Middleton guilty of kidnapping. Specifically, the defense attorney wanted the jurors to specify which of Middleton's acts (apart from the robbery itself) constituted the offense of kidnapping.

In response, the prosecutor suggested an alternative: an interrogatory that would not ask the jurors to divulge the details of their decision, but which would simply ask the jurors, "Did [you] unanimously find that the restraint [in this case] was more than merely incidental to the commission of the robbery?"

After discussing this issue a little more with the parties, Judge Volland agreed to give the prosecutor's suggested interrogatory to the jurors in the event that the jurors found Middleton guilty of kidnapping.

As already explained, the jurors did find Middleton guilty of kidnapping—and Judge Volland therefore required them to return to their deliberations and answer the special interrogatory.

The problem with this special interrogatory—as Judge Volland and the parties were soon to discover—is that it asked the jurors to declare whether Middleton's restraint of Limani was "more than merely incidental to the commission of the robbery", but there was no jury instruction that informed the jurors what "merely incidental" meant.

Lawyers and judges familiar with the *Hurd* decision would understand this concept of an "incidental" restraint. They would understand that Middleton's restraint of Limani would be "incidental" to Middleton's commission of the robbery if, under the five *Hurd* factors, the restraint of Limani was not sufficiently distinct from the robbery to support a separate conviction for kidnapping.

But no one explained this to the jury. In particular, no one told the jurors that the word "incidental" had a special legal meaning in this context. Instead, the jurors were left to answer Judge Volland's special interrogatory using the everyday meaning of "incidental". This everyday meaning, according to *Webster's New World College Dictionary*, is "happening as a result of[,] or in connection with[,] something more important".[1] It is therefore hardly surprising that, when the jurors announced their answer to the special interrogatory, they declared that Middleton's restraint of Limani was "merely incidental" to the robbery.

After asking the jurors to return to the jury room for a few minutes, Judge Volland told the parties that he considered the jurors' answer to the special interrogatory to be inconsistent with their verdict on the kidnapping charge. The judge then asked the parties to offer suggestions on what to do.

Middleton's attorney asked Judge Volland to dismiss the jury, vacate the kidnapping conviction, and enter a judgement of acquittal on that count of the indictment. However, the prosecutor belatedly recognized and pointed out the problem. She told the court,

That language [about "merely incidental"] is specialized language that applies to kidnapping. But [Instruction] 17 doesn't have that language. ... It's my fault [because I was the one who proposed the wording of the special interrogatory]. But ... I imagine that that's the source of their confusion . . . .

Judge Volland ultimately agreed with this analysis. That is, he agreed that the use of the phrase "merely incidental" in the special interrogatory was probably confusing to the jurors, and he further agreed that the real question was whether the jurors unanimously concluded that Middleton's restraint of Limani qualified as a "restraint" under the test described in Instruction 17. (This was the instruction that listed the five *Hurd* factors, and that required the jurors to decide whether Middleton restrained Limani "for a period of time[,] or moved [him] a greater distance[,] than was necessary to accomplish the target crime [of robbery]".)

Accordingly, Judge Volland directed the jurors to answer the following question: "Did [you] unanimously find that the restraint in the kidnapping was as defined in Instruction No. 17?" The jurors answered "yes". Based on this answer, Judge Volland accepted the jury's guilty verdict on the kidnapping charge.

On appeal, Middleton argues that the jurors' answer to the special interrogatory is simply inconsistent with their guilty verdict on the kidnapping charge—because if the jurors found that Middleton's restraint of Limani was "merely incidental" to the robbery, then the jurors could not lawfully find Middleton guilty of the separate offense of kidnapping.

■■■ But when verdicts are challenged for inconsistency, the verdicts must be evaluated in light of the instructions that the jury

---

1. *Webster's New World College Dictionary* (Fourth Edition, 2004), p. 721.

received.[2] As Judge Volland recognized, the purported inconsistency between the jurors' answer to the special interrogatory and their verdict finding Middleton guilty of kidnapping arises only because no one ever explained to the jurors that, in this specialized context, an "incidental" restraint is a restraint that does not satisfy the test set forth in Instruction 17. In other words, "incidental" is shorthand for a legal conclusion; it is the legal label that we apply to a restraint that will not support a separate conviction for kidnapping under the five-factor *Hurd* test.

Once Judge Volland recognized this problem, he asked the jurors directly whether they unanimously found that Middleton's restraint of Limani qualified as a "restraint" that would support a separate conviction for kidnapping under the test contained in Instruction 17. When the jurors answered "yes", this resolved the seeming inconsistency between the jurors' earlier answer to the special interrogatory and their verdict finding Middleton guilty of kidnapping.

Accordingly, we uphold Judge Volland's decision to accept the jurors' kidnapping verdict.

*Judge Volland's refusal to instruct the jury on the lesser offense of third-degree theft*

■ As explained above, Middleton's defense at trial was that there was no robbery and there was no kidnapping. Rather, the whole episode was an elaborate scheme, concocted by Limani, to steal money from his employer (the pizza parlor) by making it appear that the money was taken during a robbery.

Toward the end of the trial, Middleton's attorney asked Judge Volland to instruct the jurors on the offense of third-degree theft (*i.e.*, theft of less than $500). The defense attorney argued that, under the facts of Middleton's case, theft was a lesser included offense of robbery—because, if the jurors accepted the defendant's version of the facts, then Middleton should be acquitted of kid-

napping and robbery, but he should be convicted of theft (as Limani's accomplice).

Judge Volland concluded that third-degree theft was not a proper lesser included offense of the robbery charge, and we agree (although not for the same reasons that Judge Volland gave).

Under the facts presented here, theft was not a lesser offense included within Middleton's robbery of Limani. Rather, theft was an additional offense that could have been brought against Middleton.

To prove robbery, the State had to prove that Middleton took or attempted to take money from Limani's immediate presence and control, and that Middleton used force or the threat of force to prevent or overcome resistance to the taking, or to prevent or overcome resistance to Middleton's retention of the money after the taking, or to compel Limani to deliver the money or to engage in any other conduct that would aid in the taking of the money. *See* AS 11.41.510(a).

To establish theft, the State would have to prove two elements that are not included in a charge of robbery: the value of the property, and the robber's intent to permanently deprive. Moreover, under Middleton's version of the facts, the victim of this theft would not be Limani (who, according to the State, was the victim of the robbery). Rather, Middleton asserted that the victim of the theft was someone completely different: Limani's employer, the owner of the pizza parlor.

We have held that a lesser offense is not "included" within a charged offense if the proposed lesser offense actually constitutes a separate crime for which the defendant might have been separately convicted.[3] Here, Middleton could have been charged with both the robbery of Limani *and* the theft of money from the pizza parlor—because the robbery consisted of the assault upon Limani for the purpose of taking money from his immediate presence and control, but the money that Limani was carrying belonged to the pizza parlor.

---

**2.** *See Brown v. Anchorage,* 915 P.2d 654, 660 (Alaska App.1996); *Hansen v. State,* 845 P.2d 449, 456–57 (Alaska App.1993).

**3.** *See Dolchok v. State,* 763 P.2d 977, 980–81 (Alaska App.1988); *Hartley v. State,* 653 P.2d 1052, 1054–55 (Alaska App.1982).

See, for instance, *Ward v. State*, 120 P.3d 204, 206–08 (Alaska App.2005), *Paige v. State*, 115 P.3d 1244, 1246 (Alaska App.2005), *McGrew v. State*, 872 P.2d 625 (Alaska App. 1994), and *George v. State*, 836 P.2d 960, 961 (Alaska App.1992), where we upheld a defendant's separate convictions for robbery and theft.

For this reason, the lesser offense of third-degree theft was not a lesser included offense within the charge of robbery.

In addition, any error in failing to instruct the jury on third-degree theft was harmless under the facts of Middleton's case. Middleton proposed that the jury be instructed on third-degree theft so that there would be a verdict available to them in case they believed Middleton's assertion that he and Limani were in cahoots—that there was no robbery and there was no kidnapping, but rather an elaborately concocted plan to steal money from the pizza parlor.

But it is clear that the jury rejected Middleton's proposed version of the facts—because the jurors found Middleton guilty of kidnapping. This being so, any arguable error in failing to offer the jurors third-degree theft as an alternative to robbery is harmless.

*Conclusion*

The judgement of the superior court is AFFIRMED.