Lawrence DeWayne WARD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8666.

Court of Appeals of Alaska.

Sept. 9, 2005.

David D. Reineke, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for the Appellant.

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Security personnel at the Anchorage J.C. Penney store saw Lawrence DeWayne Ward conceal merchandise and leave the store without paying. The personnel contacted Ward in a stairwell of the Penney's parking garage that is connected to the store. While attempting to retain the merchandise and flee, Ward struggled with the Penney's security personnel, inflicting injury. For this misconduct, Ward was convicted of second-degree robbery, second-degree theft, and fourth-degree assault.[1]

In the superior court, Ward argued that his indictment and conviction for second-degree robbery are flawed because his conduct does not establish that crime. We reject Ward's claim that he did not take the merchandise from the presence and control of the victim. We accept Ward's claim that the superior court improperly relied on a statutory aggravating factor. Therefore, the superior court must reconsider Ward's sentence without relying on that factor.

### Background facts and proceedings

Donald Roberts and Juanetta Ellis, loss prevention officers at the J.C. Penney store in downtown Anchorage, saw Ward pick up three items of clothing and conceal them on his person while they watched him on a security camera. Ward left the main portion of the store and crossed the skybridge that passes over Sixth Avenue and connects with the store's parking garage. Roberts left the security camera station to intercept Ward.

---

1. AS 11.41.510(a)(1), AS 11.46.130(a)(6), and AS 11.41.230(a)(1), respectively.

Roberts found Ward in the stairwell of the parking garage. Roberts contacted Ward, identified himself, and confronted Ward about the merchandise. Roberts told Ward to come with him. Ward refused and pushed Roberts in order to get past him. Roberts grabbed Ward and would not let him go. Ward shoved Roberts, and Roberts fell down the stairs, backwards and head-first, while still holding onto Ward, who was on top. Roberts sustained injuries to his left knee and hip, both arms, right hand, and his head.

Ellis arrived with another loss prevention officer, Quinton Ellington. Ellis pulled Ward off Roberts, injuring her shoulder in the process. Ward was handcuffed and the police arrested him when they arrived.

The grand jury indicted Ward on one count of second-degree robbery, one count of second-degree theft, and one count of second-degree assault[2] based on the injuries Roberts received while struggling with Ward. The State filed an information charging one count of fourth-degree assault[3] based on the injury Ellis received while pulling Ward off Roberts.

Ward moved to dismiss the robbery count, arguing that the State presented insufficient evidence to the grand jury that Ward had taken "property from the immediate presence and control of another" because no one was present when Ward concealed the stolen items, or when he left the store, and that Penney's personnel saw Ward concealing items only on camera. Superior Court Judge Larry D. Card denied Ward's motion to dismiss. Ward moved the court to reconsider, arguing that because Roberts was not present or in control of the merchandise when Ward took it, Ward did not take the merchandise from Robert's "immediate presence and control." Judge Card denied Ward's motion to reconsider.

At the close of the State's case, Ward moved for a judgment of acquittal on the robbery charge and on the second-degree assault charge. On the robbery charge, Ward repeated his argument that he did not take the merchandise from the immediate presence or control of another person. Judge Card denied Ward's motion for a judgment of acquittal.

The jury convicted Ward of second-degree robbery, second-degree theft, and fourth-degree assault, a lesser included offense of second-degree assault. The jury acquitted Ward of the fourth-degree assault on Ellis.

At sentencing, Judge Card found three statutory aggravating factors. Judge Card sentenced Ward to 10 years with 4 years suspended on the robbery conviction. On the theft conviction, Judge Card sentenced Ward to a 3–year presumptive term, to be served concurrently with the robbery. And on the assault conviction, Judge Card sentenced Ward to 1 year, also to be served concurrently.

*Ward was properly charged and convicted of robbery*

■ Ward argues that Judge Card erred in denying his motion to dismiss and his motion for a judgment of acquittal because he did not take property from the immediate presence and control of a person, even though Penney employees Roberts and Ellis saw Ward take the merchandise while watching Ward on the security camera. Under AS 11.41.510(a)(1), a person commits second-degree robbery if,

> in the course of taking or attempting to take property from the immediate presence and control of another, the person uses or threatens the immediate use of force upon any person with intent to prevent or overcome resistance to the taking of property or the retention of the property after taking.

Essentially, Ward admits that he committed theft and assault (but not robbery) because, when he took the merchandise, no one from J.C. Penney was immediately present. Thus, Ward's case requires this court to decide whether his taking of property was from "the immediate presence and control" of a store employee, when the employee was out of Ward's sight, but observing Ward via se-

---

**2.** AS 11.41.510(a)(1), AS 11.46.130(a)(6), and AS 11.41.210(a)(2), respectively.

**3.** AS 11.41.230(a)(1).

curity camera, and when Ward did not use force against an employee until after Ward was contacted in the stairwell of the garage.

Ward urges us to rely on *Royal v. State*,[4] a case in which the Florida Supreme Court ruled that in order to commit robbery, a person must have used force "prior to or while taking" property.[5] The *Royal* court reversed the defendant's conviction because force was not used to retain stolen merchandise until after the defendants had left the store from which they stole the merchandise.[6] The court emphasized that the "taking" was complete once the thieves left the store.[7] However, as the State points out, the Florida Legislature amended Florida's robbery statute to repeal the rule in *Royal*.[8] The legislature repealed this rule by replacing "by force, violence, assault, or putting in fear" with the phrase "when in the course of taking there is the use of force, violence, assault, or putting in fear." The legislature then defined the phrase "in the course of the taking" to include an act that occurs " 'either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events.' "[9] Thus, the amended robbery statute reads much like the Alaska robbery statute. *Royal* is not persuasive authority for interpreting Florida's current robbery statute, much less our robbery statute.

The question we must answer is whether the requirement of "immediate presence and control" in our robbery statute encompasses Ward's misconduct. In the commentary to AS 11.41.510, the legislature declared that the phrase "immediate presence and control" was intended to be "broad enough to cover takings directly from the person as well as takings which, though not from the person, pose identical dangers—i.e., the taking of a pocketbook placed on a park bench accomplished by threatening the owner who is sitting on the bench." [10] This declaration reflects the legislature's policy decision to emphasize the physical danger created by a robbery over its theft aspects.[11] It is also clear from the commentary that the legislature did not require that the property be in physical contact with the victim.

This commentary reflects the prevailing construction of the phrase in other jurisdictions. Courts generally hold that property is in a victim's "immediate presence or control" if the property is "close enough to the victim and sufficiently under his control that, had the [victim] not been subjected to violence or intimidation by the robber, he could have prevented the taking." [12]

■ Furthermore, even under the more restrictive requirements of common-law robbery, property did not have to be in physical contact with a victim. "[W]hen a man's attention is directed to the need of safeguarding certain property which belongs to him and is so situated at the time that he could guard it if not prevented by violence or deterred by fear[, such] property is regarded as being under his personal protection and the wrongful taking of it by violence or intimidation is robbery." [13]

We conclude from these authorities that Ward's conduct supported a charge and conviction for second-degree robbery. Roberts, while monitoring Ward's actions in the store on the security camera, saw Ward conceal merchandise. Roberts intercepted Ward in the stairwell of the J.C.Penney parking garage where Ward used force with an intent to prevent or overcome resistance to his re-

**4.** 490 So.2d 44 (Fla.1986).

**5.** *Id.* at 46.

**6.** *Id.* at 45–46.

**7.** *Id.* at 46.

**8.** *See Fonseca v. State,* 547 So.2d 1032, 1033 (Fla.App.1989).

**9.** *Id.* (quoting Florida Statutes, Section 812.13(3)(b)).

**10.** 1978 Senate Journal 1399, Vol. 2, Supp. No. 47 (June 12th) at 27.

**11.** *See Whitescarver v. State,* 962 P.2d 192, 195 (Alaska App.1998).

**12.** 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3(c) at 179 (2d ed.2003).

**13.** Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* at 346 (3d ed.1982).

tention of the merchandise. We conclude that Judge Card properly denied the motion to dismiss the indictment. We also conclude that sufficient evidence supported the robbery conviction.[14]

*Why we vacate Ward's probationary sentence*

■ The State alleged that four statutory aggravating factors from AS 12.55.155 applied to Ward's robbery conviction: (c)(1) (a person, other than an accomplice, sustained physical injury as a direct result of Ward's conduct); (c)(6) (Ward's conduct created a risk of imminent physical injury to three or more persons, other than accomplices); (c)(8) (Ward's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior); and (c)(9) (Ward knew that the offense involved more than one victim).

Ward did not dispute aggravator (c)(8). Judge Card found aggravators (c)(1), (c)(6), and (c)(8), but rejected aggravator (c)(9). Because second-degree robbery is a class B felony [15] and Ward had two prior felony convictions, Ward was subject to a presumptive 6–year prison term under the former sentencing statute.[16] Judge Card enhanced the presumptive sentence by imposing an additional 4 suspended years of imprisonment, giving greatest weight to aggravator (c)(1), giving next-greatest weight to aggravator (c)(6), and giving least weight to aggravator (c)(8). Thus, Judge Card imposed a 10–year term with 4 years suspended for Ward's robbery conviction.

Ward challenges his sentence as violating his Sixth Amendment right to a jury trial as interpreted by the United States Supreme Court in *Blakely v. Washington.*[17] The *Blakely* Court ruled that, other than a finding of a prior conviction, a sentencing court cannot increase the statutory maximum sentence based on facts not found by a jury beyond a reasonable doubt.[18] But Ward did not object on this ground in the superior court, so Ward would have to show plain error.[19]

We need not address Ward's *Blakely* claim because we conclude that the superior court mistakenly relied on aggravator (c)(1) to enhance Ward's sentence. Judge Card based his finding of this aggravator on Ward's assault on Roberts. But in *Juneby v. State,*[20] we held that a sentencing court should not find an aggravating factor based on conduct for which the defendant is being separately sentenced.[21] Ward was separately convicted and sentenced for his assault on Roberts. Thus, it was improper for Judge Card to rely on Ward's assault on Roberts to find that the State had proven aggravator (c)(1). The superior court must reconsider Ward's sentence without reliance on this aggravating factor.

■ Because the superior court must reconsider Ward's sentence in light of this error, we need not decide Ward's other claims regarding his sentence. We note that when a defendant is sentenced for multiple offenses, the judge does not necessarily individually fashion a sentence for each count but rather may implement a sentencing plan considering all of the circumstances and the defendant's misconduct. When the superior court reconsiders Ward's sentence, the superior court may impose a composite sentence appropriate for the totality of Ward's conduct.[22] Therefore, we vacate that portion of

---

14. *See Dorman v. State,* 622 P.2d 448, 453 (Alaska 1981); *Deal v. State,* 657 P.2d 404, 405 (Alaska App.1983).

15. AS 11.41.510(b).

16. AS 12.55.125(d)(2).

17. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

18. *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2537.

19. *See Haag v. State,* 117 P.3d 775, 783 (2005).

20. 641 P.2d 823 (Alaska App.1982), *modified and superseded on other grounds, Juneby v. State,* 665 P.2d 30 (Alaska App.1983).

21. *Juneby,* 641 P.2d at 842.

22. *See Allain v. State,* 810 P.2d 1019, 1022 (Alaska App.1991).

Ward's sentence that imposed suspended imprisonment.

*Conclusion*

Ward's conviction is AFFIRMED. The superior court must reconsider Ward's sentence in light of this opinion. We do not retain jurisdiction.