**Brenda CLEVELAND, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–10466.

Court of Appeals of Alaska.

June 17, 2011.

**18.** *Id.* at 21–22.

**19.** *Id.* at 22.

**20.** *Id.*

**21.** *Id.*

Jane B. Martinez, Attorney at Law, Anchorage, for the Appellant.

Tamara E. de Lucia, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Brenda Cleveland appeals from her convictions of first-degree sexual assault, coercion, kidnapping, third-degree assault, misconduct involving weapons, fourth-degree assault, and harassment. Cleveland argues the following: (1) the trial court erred in failing to dismiss the indictment because the grand jury was improperly instructed on kidnapping; (2) the trial court erred in denying her request to confront and cross-examine M.J., the victim, regarding a pending municipal prostitution charge; (3) the court erred in failing to dismiss the kidnapping charge due to insufficient evidence; (4) the court erred in not revising the present-offense section of the presentence report based on the evidence presented at trial; and (5) her sentence was excessive in light of her history and the facts of this case. For the reasons that follow, we affirm Cleveland's conviction and sentence, but we remand the case to the trial court so that it can clarify its ruling on Cleveland's presentence report.

### Background

Cleveland was tried jointly with co-defendants Douglas McClain and Annie Shinault.[1] The following description of the evidence focuses on the testimony regarding Cleveland's personal involvement in these crimes.

M.J. was a prostitute who relocated to Anchorage from Kansas City in 2006. In April 2007, M.J. stole two ounces of crack, a pistol, a cell phone, and a set of car keys from McClain after coming to his trailer and performing sexual services. M.J.'s acquaintances later robbed McClain, stealing about $8,000 from him.

A few days later, on April 8, 2007, M.J. was walking home when Shinault—a friend of McClain's—pulled up in a truck. Believing it would be futile to run, M.J. accepted Shinault's invitation to get in. Shinault

---

1. *See Shinault v. State,* 258 P.3d 848 (Alaska App.2011).

picked up Cleveland and proceeded to McClain's trailer.

Upon her arrival, McClain struck M.J. in the face, demanding to know what became of his money and drugs. M.J. fell to the ground and all three defendants began kicking her. This was the start of a series of beatings and tortures that lasted for about three days.

Cleveland hit M.J. in the head with a gun and shaved off some of M.J.'s hair before the clippers broke. She sprayed M.J. with Febreze, hit her in the knee with a hammer, and threatened her life. Cleveland shoved her gloved hand into M.J.'s rectum and then made M.J. lick the glove. She also burned M.J. with crack pipes and cigarettes, and pointed a gun at her.

At some point during this period of abuse, an acquaintance of Cleveland's named V.B. arrived to help clean up the trailer. V.B. stole McClain's crack pipe and smoked its residue while he was sleeping and then hid it, presumably so she could use it again later. She also stole some rolls of quarters from one of the bedrooms.

When McClain realized that V.B. had stolen these items, V.B. was subjected to much of the same treatment as M.J. V.B. testified that all three assailants beat her with a belt, shoved her with a bat, struck her in the face, and strip-searched her. Eventually McClain fell asleep, and Cleveland and Shinault apparently left the trailer. V.B. grabbed her clothes and escaped to a nearby gas station, where she called the police.

The jury found Cleveland guilty of first-degree sexual assault on M.J.,[2] coercion,[3] kidnapping M.J.,[4] third-degree assault against M.J.,[5] third-degree misconduct involving weapons,[6] fourth-degree assault against M.J.,[7] and second-degree harassment of M.J.[8] She was acquitted of kidnapping V.B. and fourth-degree assault against V.B., and the State dismissed a charge of third-degree assault against V.B.

### Discussion

*The trial court was not required to dismiss the kidnapping indictment.*

"In challenges to the sufficiency of the evidence before a grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment."[9] The evidence is sufficient if, viewed in the light most favorable to the indictment, "it is adequate to persuade reasonable minded persons that if unexplained or uncontradicted it would warrant a conviction of the person charged with an offense by the judge or jury trying the offense."[10]

Count 18 of the indictment charged Cleveland with kidnapping M.J. under theories of both principal and accomplice liability. The indictment charged that Cleveland "restrained M.J. with intent to inflict physical injury upon or sexually assault M.J., or place M.J. or a third person in apprehension that any person will be subjected to serious physical injury or sexual assault."[11]

As part of its presentation of Cleveland's kidnapping charge, the State read to the grand jury the definition of "restrain," as found in AS 11.41.370(3):

"restrain" means to restrict a person's movements unlawfully and without consent, so as to interfere substantially with the person's liberty by moving the person from one place to another or by confining the person either in the place where the restriction commences or in a place to which the person has been moved; a re-

---

**2.** AS 11.41.410(a)(1).

**3.** AS 11.41.530(a)(1).

**4.** AS 11.41.300(a)(1)(C); AS 11.16.110.

**5.** AS 11.41.220(a)(1)(A).

**6.** AS 11.61.200(a)(1).

**7.** AS 11.41.230(a)(1).

**8.** AS 11.61.120(a)(5).

**9.** *State v. Williams,* 855 P.2d 1337, 1346 (Alaska App.1993) (citing *State v. Ison,* 744 P.2d 416, 418 (Alaska App.1987)).

**10.** *State v. Parks,* 437 P.2d 642, 644 (Alaska 1968) (footnote omitted).

**11.** *See* AS 11.41.300(a)(1)(C).

straint is "without consent" if it is accomplished ... by force, threat, or deception. The State then presented evidence of Cleveland's kidnapping of M.J. Much of the evidence presented was the same as that presented later in trial.

M.J. testified that she had stolen drugs from McClain and that she was walking home when Shinault pulled up in a car and told her to get in. Shinault then drove to the Merrill Field Inn where Cleveland was already standing outside, waiting for Shinault to arrive. The three women proceeded to McClain's trailer, and upon arrival, Shinault, Cleveland, and McClain all began beating her.

M.J. testified that Cleveland hit her in the face countless times and shaved off some of M.J.'s hair. She sprayed M.J.'s genitals with Febreze while calling her a "stinking ho[ ]." She hit M.J. in the knee with a hammer, subjected her to death threats, and beat her with a shoe and a beer bottle. Cleveland shoved her gloved hand into M.J.'s rectum and then made M.J. lick the glove. She also burned M.J. with crack pipes and lighters. McClain whipped M.J. with a belt and forced her to perform fellatio on him at least twice.

M.J. testified that she never felt free to leave the house. She told the police officers who raided the house that they had saved her life.

Cleveland moved to dismiss the kidnapping charge involving M.J., arguing that the State's evidence presented to the grand jury was legally insufficient to establish the element of restraint required under the kidnapping statute. Cleveland did not argue to the trial court that the prosecutor failed to properly instruct the grand jury on the definition of restraint, as she now argues on appeal. Judge McKay denied the motion, ruling that "[t]he Grand Jury was presented with sufficient evidence that, if unexplained or uncontradicted, would warrant [Cleveland's] conviction ... on the charge of kidnapping." Cleveland now appeals.

A restraint that is "merely incidental" to the commission of another offense (like sexual assault) does not constitute kidnapping.[12] To support a separate conviction for kidnapping, the State must show that the defendant "intended to restrain [the victim] either [temporally] or spatially beyond what was necessary to commit sexual or physical assault." [13]

We have identified five factors that the trial court should consider in determining whether a restraint is incidental to the target crime:

(1) how long the victim was restrained; (2) if the victim was moved, how far the victim was moved and where the victim was taken; (3) whether, under the facts, the restraint exceeded what was necessary for commission of the defendant's target crime; (4) whether the restraint significantly increased the risk of harm to the victim beyond the risk of harm inherent in the target crime itself; and (5) whether the restraint had some independent purpose—*i.e.*, whether the restraint made it significantly easier for the defendant to commit the target crime or made it significantly easier for the defendant to escape detection.[14]

Cleveland also relies on *Alam* and *Hurd*. However, she arrives at the wrong conclusion in applying the facts of her case to the *Hurd* factors. When viewing the evidence presented to the grand jury in the light most favorable to upholding the indictment, it becomes clear that the evidence presented meets the *Hurd* test.

The first factor is the time the victim was restrained. Cleveland correctly points out that M.J. did not testify as to precisely how long she was held. And M.J.'s testimony is hard to follow temporally. But it appears that she was held for at least two days, as she was picked up at 3:00 a.m. and testified that the following night she fell asleep and was awakened the next morning by V.B. And

12. *Alam v. State* (*Alam I*), 776 P.2d 345, 349 (Alaska App.1989).

13. *Alam v. State* (*Alam II*), 793 P.2d 1081, 1083–84 (Alaska App.1990).

14. *Hurd v. State*, 22 P.3d 12, 19 (Alaska App. 2001).

the next night, it appears that V.B. and M.J. were together sleeping on a floor. It therefore appears that M.J. spent at least two full nights in McClain's trailer, feeling that she was never free to leave. M.J.'s restraint of at least two days is certainly long enough to constitute a restraint for kidnapping purposes.

The second factor is an evaluation of the distance the victim was moved. M.J. testified that Shinault picked her up at 11th Avenue and Hyder Street. They drove to the Merrill Field Inn to pick up Cleveland. After dropping off a passenger in Mountain View, the women continued on to McClain's trailer in Muldoon. Driving M.J. miles across Anchorage is enough distance to satisfy this factor.

The third factor is whether the restraint exceeded what was necessary for the commission of the target offense. Cleveland argues that M.J. presented no testimony establishing that Cleveland personally restrained her any longer than was needed to commit the target acts (*i.e.*, sexual and physical assault). Because Cleveland left the trailer for periods of time, leaving M.J. alone with McClain, she argues that this weighs against a finding of kidnapping. But this ignores Cleveland's assistance in physically transporting M.J. from downtown Anchorage to Muldoon and her personal involvement in M.J.'s abuse. Even if Cleveland did leave the trailer for periods of time, she participated in the transportation, the abuse, and the creation of a climate in which M.J. felt unable to leave and feared for her life. This was a level of restraint beyond that required to commit sexual and physical abuse.

The fourth factor is whether the restraint significantly increased the risk to M.J. beyond that inherent in the target crimes themselves. Cleveland brandished a gun for at least part of the time M.J. was held at the trailer. She threatened to kill M.J. multiple times. Cleveland's restraint of M.J. significantly increased the risk to M.J. beyond that inherent in sexual and physical assaults themselves.

The final factor is whether the restraint had an independent purpose. Here, the target crimes—sexual and physical assault—could have been committed in Shinault's truck, at the Merrill Field Inn, or just about anywhere else, especially since M.J.'s initial abduction occurred at 3:00 a.m. when few people would have been likely to observe the assaults. By isolating M.J. in the trailer, the defendants enabled the assaults and the restraint to continue for days—a period far longer than that required to simply commit a sexual assault and a few beatings. The independent purpose of the restraint was to isolate and scare M.J. Indeed, it worked—M.J. testified that she thought she was going to die.

In summary, the State presented the grand jury with sufficient evidence that, if unexplained or uncontradicted, would warrant Cleveland's conviction on the charge of kidnapping.

As noted above, Cleveland argues for the first time on appeal that the grand jury indictment should have been dismissed because the grand jurors were not properly instructed by the prosecutor. She argues that even though the grand jury received the statutory definition of restraint, the jury should have been instructed on the five-factor test we have outlined above. We conclude the evidence at grand jury showed that Cleveland restrained M.J. far more than was "merely incidental" to the target crimes of assault and sexual assault, and that it is unlikely that the grand jury would have refused to indict Cleveland for kidnapping even if they had been fully instructed on the five-factor test.[15] We therefore uphold the kidnapping conviction.

*The limitation on the cross-examination of M.J. was harmless beyond a reasonable doubt.*

■ M.J. was arrested in September 2007 (about five months after her assault at McClain's trailer) for a prostitution charge prosecuted by the Municipality of Anchorage. However, before she appeared in court, she returned to Kansas City, and a bench warrant issued for her arrest. She nonetheless

---

**15.** *Hurd,* 22 P.3d at 20.

worked with the State to prepare as a witness in this case, and returned to Alaska for trial in June 2008. Despite the State's knowledge of M.J.'s outstanding warrant, she was not arrested upon arrival.

Judge McKay ruled that Cleveland and her co-defendants could inquire "as to the existence of the bench warrant" and as to a phone call that the prosecutor made to urge the Office of Victims' Rights to help M.J. get the warrant quashed. But the judge ruled that the defendants could not ask "what the underlying crime was."

M.J. also received immunity from prosecution for any crimes she committed in the course of her interactions with McClain in exchange for her testimony against McClain, Shinault, and Cleveland. McClain's attorney cross-examined M.J. extensively regarding this immunity agreement. He asked her about nine different crimes she committed and their respective penalties, including several drug offenses, robbery, burglary, assault, and conspiracy to commit robbery. He established that she did not want to go to prison. And he asked, "Committing nine serious felonies is a good motivation to try to get out of [going to prison], isn't it? ... And do whatever it takes to not have to spend any time there?" M.J. answered in the affirmative and admitted that she got a "huge break" from the State in this case.

McClain also cross-examined M.J. about the outstanding warrant for her arrest and the fact that she had not been arrested upon arrival in Alaska. M.J. admitted that the District Attorney's Office and the Office of Victims' Rights worked with her to get her warrant quashed and that knowing she would not be arrested was a "strong motivator."

Cleveland's attorney specifically cross-examined M.J. about the fact that she was supporting herself by prostitution at the time she met McClain.

On appeal, Cleveland argues that Judge McKay erred in denying her the constitutional right to cross-examine M.J. concerning her bias on account of the pending Municipality of Anchorage prostitution charges.

A trial court must be "particularly solicitous toward cross-examination that is intended to reveal bias, prejudice, or motive to testify falsely." [16] But "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." [17]

We generally review a trial court's ruling regarding the limits of cross-examination for abuse of discretion.[18] If the trial court made a constitutional error, then the State bears the burden of proving that the error was harmless beyond a reasonable doubt.[19]

The co-defendants were permitted to cross-examine M.J. extensively on her bias; the only restriction the court placed was that they could not inquire into the criminal charge (prostitution) that formed the basis for her outstanding warrant. Judge McKay ruled that they could inquire into "[t]he fact that there's a warrant out there and that the state and the municipality, law enforcement officers aren't arresting her." However, he ruled that inquiring into the underlying charge of prostitution would be irrelevant.

We conclude that, if there was any error in the judge's ruling about the prostitution charge, then the error was harmless beyond a reasonable doubt. The name of the charge that M.J. was facing was not particularly relevant to her bias. And the fact that the prostitution charge was being prosecuted by the Municipality weakened the inference that the State prosecutor would be able to control the disposition of that charge.

16. *Wood v. State*, 837 P.2d 743, 745 (Alaska App.1992) (collecting cases).

17. *Id.* at 746–47 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

18. *See Wyatt v. State*, 981 P.2d 109, 112 (Alaska 1999) (citing *Colt Indus. Operating Corp., Quincy Compressor Div. v. Frank W. Murphy Mfr., Inc.*, 822 P.2d 925, 932 (Alaska 1991)).

19. *Id.* (citing *Wamser v. State*, 652 P.2d 98, 103 (Alaska 1982)).

In addition, McClain thoroughly cross-examined M.J. regarding the felony charges covered by the State's immunity agreement. These felony charges carried much more serious penalties than the misdemeanor prostitution charge.[20] Cleveland cross-examined M.J. about the fact that she was a prostitute. There is no reasonable possibility that additional examination regarding the pending prostitution charge would have altered the jury's verdicts.

*The trial evidence was sufficient to support the kidnapping conviction.*

■ This court reviews claims of insufficient evidence by viewing the evidence presented at trial, and reasonable inferences drawn from that evidence, in the light most favorable to upholding the jury's verdict.[21] "Viewing the evidence from this perspective, this court must decide whether a fair-minded juror exercising reasonable judgment could conclude that the State had met its burden of proving guilt beyond a reasonable doubt."[22]

Cleveland also argues that the State did not present any evidence that she planned or aided in the assaults by McClain against M.J. that occurred while Cleveland was not present. But these arguments improperly view the evidence in the light most favorable to Cleveland and ignore the ample evidence of M.J.'s restraint while Cleveland was, in fact, present.

The jury was properly instructed on the law of kidnapping. They were instructed that in order to find Cleveland guilty of kidnapping M.J., they had to find the following:

(1) That the event in question occurred at or near Anchorage, Alaska, and on or about April 8, 2007, to April 11, 2007;

(2) The defendant, as principal or accomplice, restrained M.J.; and

(3) That such restraint was with the intent to inflict physical injury upon or sexu-

ally assault M.J. or place M.J. or another person in apprehension that any person would be subjected to serious physical injury or sexual assault.

And the jury was properly instructed as to how to evaluate whether M.J. was restrained.

Cleveland's participation in M.J.'s abduction and restraint was far more than "incidental" to the assaults she also committed.[23] Shinault and Cleveland picked M.J. up off the streets and brought her to a secure, discreet location so that the defendants could more easily torture and beat her for days. She was moved miles across Anchorage and restrained for at least two days. The restraint far exceeded the minimal time required to perpetrate sexual and physical assaults. We conclude that the State presented sufficient evidence to support the jury's verdict.

*The trial court's ruling on the presentence report needs clarification.*

■ As noted above, Cleveland was convicted of several crimes committed against M.J.; she was not convicted of any of the charges that she had committed crimes against V.B. But the presentence report included a detailed statement that V.B. had given to the police that alleged that Cleveland had committed crimes against her.

Cleveland objected to the portion of the presentence report containing V.B.'s police statement. At the sentencing hearing, Cleveland's attorney clarified that she was asking the court to strike V.B.'s statement as it appeared on pages nine through fifteen of the report.[24] Judge McKay stated that he would not rely on V.B.'s statement when he sentenced Cleveland, but he declined to strike the disputed material from the presentence report.

**20.** AS 11.66.100; Anchorage Municipal Code 8.65.010–.020.

**21.** *Dailey v. State,* 65 P.3d 891, 898 (Alaska App. 2003).

**22.** *Id.*

**23.** *See generally Alam I,* 776 P.2d at 349 (discussing whether the restraint used by the defendant

was "merely incidental" to the commission of another crime).

**24.** The State argues that Cleveland failed to properly raise this issue in the superior court, but we conclude that it was adequately preserved for appeal.

Alaska Criminal Rule 32.1(f)(5) states the procedure to resolve disputed material in the presentence report:

The court shall enter findings regarding any disputed assertion in the presentence report. Any assertion that has not been proved shall be deleted from the report; any assertion that has been proved only in part shall be modified in the report. Alternatively, if the court determines that the disputed assertion is not relevant to its sentencing decision so that resolution of the dispute is not warranted, the court shall delete the assertion from the report without making any finding. After the court has made the necessary deletions and modifications, the court's corrected copy shall be labeled the "approved version" of the presentence report.

In past cases, we have required the defendant to deny disputed portions of the presentence report under oath in order to raise a legitimate dispute.[25] Criminal Rule 32.1(d)(5) also requires that the defendant identify the information that raises a genuine dispute. In this case, Cleveland made an equivalent offer of proof when she relied on the testimony that led the jury to return acquittals on all of the charges involving V.B.

When the defendant makes an offer of proof that is adequate to raise a genuine dispute, a sentencing judge must make take the action required by Rule 32.1(f). If the judge finds that the assertions in the presentence report are true, then it is not necessary to modify the report. But if the judge finds that the assertions in the report are not true, then the judge must make appropriate modifications or deletions.

In the alternative, the judge may determine that the disputed allegations are "not relevant to [the] sentencing decision so that resolution of the dispute is not warranted."[26] This may be what Judge McKay determined when he indicated that he would not rely on the disputed allegations when he sentenced Cleveland. But when a judge decides not to resolve the validity of irrelevant assertions, the judge must delete those assertions from the presentence report.

On remand, the superior court must determine whether V.B.'s police statement is true, not true, or irrelevant. If the disputed assertions are not true or irrelevant to the sentencing decision, then the disputed portion of the report must be modified or stricken and the court must issue a corrected copy labeled as the "approved version" of the presentence report.

*Cleveland's sentence is not excessive.*

■ The Alaska Supreme Court has adopted the "clearly mistaken test" in reviewing excessive sentence claims.[27]

Cleveland was previously convicted in 1997 of a felony: fourth-degree misconduct involving a controlled substance. For her convictions in the present case, she therefore faced the following: (1) a presumptive sentence of thirty to forty years and a maximum of ninety-nine years for the first-degree sexual assault conviction;[28] (2) a presumptive sentence of two to four years and a maximum of five years for each of her Class C felony convictions for coercion, third-degree assault, and third-degree weapons misconduct;[29] (3) a minimum sentence of five years and a maximum sentence of ninety-nine years for the kidnapping conviction;[30] (4) a maximum sentence of one year for the fourth-degree assault conviction;[31] and (5) a maximum sentence of ninety days for the second-degree harassment conviction.[32] The judge found an aggravating factor based on Cleveland's prior assault convictions, so the court had the option to exceed the otherwise applicable presumptive ranges as long as the sentences did

25. *See, e.g., Garland v. State,* 172 P.3d 827, 828–29 (Alaska App.2007).

26. Alaska R.Crim. P. 32.1(f)(5).

27. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

28. AS 12.55.125(i)(1)(C).

29. AS 12.55.125(e)(2); AS 11.41.220(e); AS 11.41.530(c); AS 11.61.200(i).

30. AS 12.55.125(b).

31. AS 12.55.135(a); AS 11.41.230(b).

32. AS 12.55.135(b); AS 11.61.120(b).

not exceed the maximum sentences for these counts.[33]

Judge McKay sentenced Cleveland as follows: (1) forty years with ten years suspended for the first-degree sexual assault; (2) two years to serve with one year to run concurrent for coercion; (3) two years to serve with one year to run concurrent for third-degree assault; (4) two years to serve with one year to run concurrent for third-degree weapons misconduct; (5) thirty years to serve with fifteen years to run concurrent for the kidnapping; (6) six months to serve consecutive to the other counts for fourth-degree assault; and (7) ninety days to serve with sixty days to run concurrent for second-degree harassment. The composite sentence was forty-eight years and seven months of imprisonment with ten years suspended.

Cleveland presents two primary arguments as to why her sentence was excessive: (1) her conduct in committing the sexual assault and kidnapping fell on the least serious end of the spectrum of these types of crimes and (2) the court should have placed more emphasis on rehabilitation instead of isolation and community condemnation.

The active portion of Cleveland's sentence for sexual assault actually falls on the bottom of the presumptive range of thirty to forty years for a second felony offender. The judge was also required to impose a minimum suspended sentence of five years' imprisonment for this unclassified felony.[34] And Cleveland's consecutive sentence of fifteen years' imprisonment for kidnapping also falls in the lower range of sentences for that offense—the judge was required to impose at least five years of consecutive time for this count.[35] Thus, the minimum sentence for these two counts was thirty-five years of active imprisonment.

Cleveland received an active sentence of forty-five years' imprisonment for the assault and kidnapping offenses. Thus, Cleveland received a sentence near the minimum for these offenses—a sentence that would be appropriate even if we concluded that Cleveland's conduct was substantially mitigated.

But "[w]hen this court reviews a composite sentence imposed for two or more criminal convictions, we assess whether the combined sentence is clearly mistaken, given the whole of the defendant's conduct and history." [36] And because we look at the defendant's conduct as a whole, "we do not require that each specific sentence imposed for a particular count or offense be individually justifiable as if that one crime were considered in isolation." [37]

Judge McKay found that Cleveland's behavior verged on torture. Her acts were violent and designed to degrade M.J. The kidnapping lasted for three days, during which time M.J. was beaten, sexually abused, and feared for her life. Even though Cleveland did not personally inflict all of the damage, she was an integral player in the drama as a whole.

Judge McKay chose to make the sexual assault conviction the lead sentence and imposed much of the remaining sentences to run concurrently. Cleveland's claim that the sexual assault and kidnapping sentences were excessive because of the less serious nature of the crimes ignores the court's prerogative to craft a sentence based on the entirety of the defendant's conduct and history.

Cleveland also claims that the trial court should have placed more emphasis on rehabilitation rather than isolation, because her prior felony conviction was non-violent and she is a good candidate for rehabilitation. She appears to rely on Judge McKay's comment that he was "not giving up" on her. But she ignores Judge McKay's other lengthy comments concerning why he crafted her sentence as he did.

The judge explained, that while Cleveland appeared to perform well in therapy, she previously had ample opportunities to rehabilitate herself but failed. While she was

---

**33.** *See* AS 12.55.155(a)(2).

**34.** *See* AS 12.55.125(*o*–)(1).

**35.** AS 12.55.127(c)(2)(B).

**36.** *Brown v. State,* 12 P.3d 201, 210 (Alaska App. 2000).

**37.** *Id.*

actually in therapy, she performed well, but as soon as she was moved to probation, she fared poorly. Judge McKay concluded that Cleveland would fail if she was again released on probation. And given the violent, degrading, and lengthy nature of her crimes, he felt strongly about the need to protect the public from future retaliation of this type. Judge McKay therefore carefully evaluated Cleveland's past, her present crimes, and her potential for rehabilitation and concluded that the isolation and community condemnation factors outweighed the unlikely prospects for her rehabilitation. We conclude that the judge was not clearly mistaken in fashioning Cleveland's sentence.

### Conclusion

We AFFIRM the superior court's judgment and sentence, but remand the case to the court to clarify its order regarding the presentence report. On remand, the superior court must determine whether the portion of the presentence report containing V.B.'s police statement is true, not true, or irrelevant. If the disputed assertions are not true or they are irrelevant to the sentencing decision, then the disputed portion of the report must be modified or stricken, and the court must issue a corrected copy labeled as the "approved version" of the presentence report.