NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| JOHN L. SMITH JR.,<br><br>Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>Appellee. | Court of Appeals No. A-12089<br>Trial Court No. 3KN-12-613 CR<br><br>O P I N I O N<br><br>No. 2487 — January 29, 2016 |

Appeal from the Superior Court, Third Judicial District, Kenai, Carl Bauman, Judge.

Appearances: Elizabeth D. Friedman, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Amanda L. Browning, Assistant District Attorney, Kenai, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge SUDDOCK, writing for the Court and concurring separately.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

John L. Smith Jr. pled guilty to failure to render assistance to an injured person after an automobile accident.[1]  At sentencing, Smith argued that the traffic accident was unavoidable because the child he struck had darted across the roadway directly into the pathway of Smith's oncoming car.  He submitted a report by an expert who concluded that Smith was not at fault.  But the judge's sentencing remarks were ambiguous as to whether he in fact found Smith to be at fault, and whether he enhanced Smith's sentence because of this.  This is problematic because the record does not support a finding that Smith was at fault.

Smith objected to several allegations contained in the presentence report.  The judge ruled that the challenged allegations were speculative and that he would not rely on them.  But he declined to strike them from the presentence report as required by Criminal Rule 32.1(f)(5).

Smith was sentenced to 7 years with 3 years suspended.  He appeals his sentence as excessive, arguing that the judge relied upon unproven assumptions about Smith's degree of fault.  Because we perceive a substantial possibility that the judge relied on such speculation in sentencing Smith, we remand for resentencing.

*Facts and proceedings*

Around 6:00 p.m. on April 17, 2012, Smith was driving his SUV along Kalifornsky Beach (or K-Beach) Road in Kenai at approximately fifty-five miles per hour, the posted speed limit.  T.T., a seven-year-old child, was playing with other children at a large puddle near the side of the road opposite to Smith's lane of travel.  Christine Posey, a witness to the accident, testified to the grand jury that after she drove by the children playing to her right, she looked in her rear-view mirror and saw a "little

---

[1]    AS 28.35.060.

girl on a bike," followed by a "little one," approaching the road. The girl on the bicycle stopped at the roadside, but the smaller child appeared to hesitate, and then "she darted out on the road." Posey said she saw smoke from burnt rubber as Smith's oncoming SUV braked and veered to its right. She did not see the actual impact.

Smith was on felony probation at the time and had been released on bail following his arrest on a petition to revoke his probation. Because he had absconded from his third-party custodian, a warrant for his arrest was outstanding at the time of the accident. As nearby adults approached to render aid, Smith fled the scene; he was arrested several days later.

T.T.'s injuries were not life-threatening, but she suffered a partially collapsed lung, abrasions, a black eye, a fractured upper jaw or palate, and a loose tooth. She spent two days in a hospital.

The grand jury indicted Smith not only for leaving the scene of an injury accident but also for *causing* the accident: for first-degree assault (recklessly causing serious physical injury by means of a dangerous instrument); second-degree assault (recklessly causing serious physical injury); third-degree assault (recklessly causing physical injury by means of a dangerous instrument); and third-degree assault (with criminal negligence causing physical injury by means of a dangerous instrument).

Pursuant to a Rule 11 agreement, the State dismissed the assault counts, and Smith pled guilty to leaving the scene. In advance of sentencing, Smith filed a report by an accident reconstruction expert who concluded that Smith was at most traveling fifty-seven miles per hour. The expert noted that the children may not have been visible to drivers, such as Smith, in the far lane. He concluded that Smith was unable to stop despite his best efforts, and that he was not at fault for the accident.

The presentence report author concluded that "[h]itting this girl with [Smith's] vehicle was an accident." And the State in its sentencing remarks did not

accuse Smith of bad driving. But the judge nonetheless appeared to blame Smith for causing the accident:

> [O]ther drivers appeared to note children playing ... in a mud puddle near the highway. So other people were cautious. ... So one could speculate that if the defendant were impaired by any consumption of drugs, maybe his reaction was just a titch, a small amount, slower[.]
>
> . . . .
>
> This is a little different than a child darting out from behind a tree or an obstruction along a highway. These children were visible from a distance and observed by other drivers to be visible from a [distance].
>
> . . . .
>
> Missing probation officer appointments, having had at least one or two hot UAs, these things happened prior to the accident. The degree to which they may have contributed is speculation. Possible that he was impaired[.]
>
> . . . .
>
> The conduct in question here was offensive. It's not what the community expects a driver to do, even if the driver is not high or is not speeding. The conduct here suggests the driver knew that what he did was wrong and was trying to get away with it. ... I think it is offensive for drivers not to slow down when children are playing near a roadway.

Leaving the scene of an injury accident is a non-classified felony with a sentencing range of 0 to 10 years.[2] As noted, the court sentenced Smith to 7 years with 3 years suspended. This sentence appeal followed.

---

[2] AS 28.35.060(a) & (c).

*Why we remand for resentencing*

The judge's sentencing remarks strongly suggest that he found that Smith had not driven prudently, that Smith may have been impaired by drugs at the time, and that Smith fled the scene because he knew he was at fault for causing the accident. The judge expressed his displeasure with drivers who fail to slow for children, implying that Smith was among this group.

Smith had earlier moved to dismiss the assault counts in the indictment, arguing that they were not supported by the grand jury testimony. But the judge denied the motion, mistakenly interpreting the testimony as tending to prove that other drivers had been more careful than Smith. He stated, "Witness Karl Ferlen testified that he had heard other drivers, *shortly before this incident*, *slow down and honk at the kids* playing near the road with a couple of dogs." (emphasis added) However, Ferlen did not testify that he heard vehicles slowing for the children. He testified that he saw cars slow down to avoid several *roaming dogs* that were apparently with the children — but he never testified that cars otherwise slowed due to the proximity of *children* to the road.

It is unclear whether the judge persisted in this mistaken reading of the evidence at the time of sentencing. But the judge's sentencing remarks suggest that he considered Smith to be at fault for causing the accident and that he believed that Smith may have been high on drugs. The judge did not explain how he derived these conclusions from the evidence, or how he squared this with the contrary conclusion of Smith's expert characterizing the accident as unavoidable. And the judge's remark that Smith's flight "suggests" a consciousness of guilt for causing the accident adds to our unease that the judge may have increased Smith's sentence without a firm evidentiary basis; the judge did not discuss plausible alternative explanations for Smith's flight, such as the outstanding arrest warrant, or even simple panic.

Given the ambiguity of the judge's remarks, which approach but stop just short of an actual finding of fault, we are unable to discern whether he was merely speculating that Smith might be at fault, or whether he reached a firm conclusion to that effect. If the judge was merely speculating, he erred by injecting speculation into the sentencing.[3] If, in contrast, he arrived at a firm conclusion that Smith was at fault, we find that conclusion to be clearly erroneous. We find no support in the record for a conclusion that Smith's speed, driving, attentiveness, or state of sobriety rendered him at fault for the accident. Since we perceive a substantial possibility that the judge penalized Smith based on an unsupported finding of fault, we must vacate the sentence and remand for resentencing.

*Why we remand for the sentencing judge to strike speculative allegations from the presentence report*

Smith filed written objections to several allegations lodged against him in the presentence report. At the sentencing hearing, the judge acknowledged that these allegations were unproven and speculative, or not germane to sentencing, but he repeatedly refused to strike them from the report. Smith appeals the court's refusal to redact the speculative allegations. We agree that the court erred.

For example, Smith objected to allegations in the presentence report that he flushed drugs down the toilet at a motel before he and two others were arrested. The judge ruled that he did not intend to rely on the allegation. The report also alleged that Smith "consistently" failed urinalysis tests (he argued that he had failed only two tests). The judge concluded he did not need to resolve the conflict.

---

[3]     *See Donlun v. State*, 550 P.2d 369, 371 (Alaska 1976); *Galaktionoff v. State*, 486 P.2d 919, 924 (Alaska 1971).

Smith further objected to an allegation that he had a reputation as a drug dealer. But the court overruled the objection because the implicit assertion that Smith was in fact a drug dealer could *possibly* be true:

> I mean, the statement may well be true, that may be his reputation within local law enforcement. I take it that you are denying that he's a drug dealer. Your denial is noted, but no change to the PSR.

Similarly, the report included an allegation that a drug user claimed that he could only stay clean if his dealer, Smith, was incarcerated; the judge discounted the allegation as self-serving and not worthy of belief.

The report's author opined that Smith fled the scene because he was high on drugs, or because he was transporting them. The court ruled:

> I'm not going to strike it. I don't give particular credence to it. The reason I'm not going to strike it is, if I understand correctly, [the author] was the defendant's assigned probation officer, so he's got some basis more than Joe Blow on the street to have an opinion. But his opinion is speculation, bottom line. I'm not going to strike it from the evaluation portion of the PSR.

Likewise, the report's author opined that "[i]f no one else was around to help and to notify the proper authorities then there would have been a good chance that the Defendant's actions [in leaving the scene] could have cost this little girl her life." The judge stated, "I see this just as speculation by the author," but "I'm not going to require that the PSR be changed."

Smith also objected to an allegation implicating him in a high-speed vehicle chase by the Anchorage police. The State had agreed to withdraw the allegation from a pending petition to revoke Smith's probation. But the judge both refused to rule on the

defense objection to inclusion of the allegation in the presentence report and to redact the allegation.

In each of the above instances, the judge either acknowledged the unproven and speculative nature of the allegation, or he declined to make a factual finding because he considered the matter to be irrelevant to sentencing. Nonetheless, he repeatedly refused to redact the challenged assertions from the presentence report. Because Criminal Rule 32.1(f)(5) requires a court to redact material that a judge finds to be unproven or irrelevant, this was error:

> The court shall enter findings regarding any disputed assertion in the presentence report. Any assertion that has not been proved shall be deleted from the report ... . Alternatively, if the court determines that the disputed assertion is not relevant to its sentencing decision so that resolution of the dispute is not warranted, the court shall delete the assertion from the report without making any finding.

While a presentence report is an important document to a sentencing judge, it has an enduring impact on a defendant. The report may affect a defendant's life for the duration of his incarceration and during his later probation or parole.[4] It is critical that the report be free of speculative allegations that unfairly characterize a defendant or that are groundlessly inflammatory. Here, the sentencing judge failed to redact just this sort of material from Smith's presentence report. Accordingly, we direct the judge to redact those allegations.

And although it is not a contested issue in this appeal, we note that by structuring the sentencing hearing as he did, the judge failed to follow Rule 32.1 in a different way. Even though the prosecutor pointed out that the defense objections would

---

[4] *See Davison v. State*, 307 P.3d 1, 3 (Alaska App. 2013).

take considerable time to resolve and would require active participation by the State, the judge directed Smith's attorney to litigate his objections during the time allotted for defense counsel's sentencing argument, just prior to the court's imposition of sentence. But Rule 32.1 implicitly requires that objections to the presentence report be resolved *before* the parties present their sentencing arguments. The parties are entitled to know the facts that the judge will consider prior to their arguments. Here the State had already completed its sentencing argument before these matters were litigated. They should have been resolved at the outset of the sentencing hearing.

*Conclusion*

We VACATE Smith's sentence and REMAND this case to the superior court for redactions from the presentence report and for resentencing. The superior court shall resolve these matters within sixty days from the date of this opinion. If at that point Smith has objections to the presentence report or to the sentence imposed, he may file a supplemental brief within thirty days thereafter. The State shall then have thirty days to file responsive briefing. We retain jurisdiction.

Judge SUDDOCK, concurring.

In the course of researching this opinion, I learned that I as a superior court judge have labored under a significant misconception about how challenges to allegations in a presentence report are to be resolved. And my misconception extended beyond allegations in a presentence report to oral allegations made by probation officers, guardians ad litem, police officers, or victims. I understood that such allegations could be taken as proved unless a defendant successfully controverted them via a testimonial denial under oath. I now realize that this view significantly over- simplifies the applicable law. Accordingly, I write to share my recently acquired understandings, that they may perhaps aid judges or lawyers in dealing with these issues.

*A defendant's objection to allegations at sentencing*

Alaska Criminal Rule 32.1(d)(5) requires that a defendant's objections to allegations in a presentence report, or to other factual allegations that will foreseeably be raised at sentencing, be filed in advance of the sentencing hearing. A defendant who objects to the accuracy of a factual allegation must disclose "any information upon which the defendant intends to rely to refute the objected-to information." Rule 32.1(f) then provides for a hearing (which can take place prior to the sentencing hearing or at its outset). Under Rule 32.1(f)(5), the court may make findings regarding each disputed assertion. The applicable standard is proof by a preponderance of the evidence.[1] Alternatively, a judge may decide that it is not necessary to resolve a factual conflict because the outcome would not affect the sentence, and so it is irrelevant.[2] The judge must then redact or reject any allegation that is unproven or irrelevant. The court must

---

[1]  *Brakes v. State*, 796 P.2d 1368, 1373 n.5 (Alaska App. 1990).

[2]  Alaska R. Crim. P. 32.1(f)(5).

designate a redacted presentence report as the "approved version," and serve it on the Department of Corrections within seven days of the sentencing hearing.[3]

*The use of hearsay at sentencing*

Alaska case law also imposes an additional procedural safeguard regarding the use of hearsay at sentencing hearings, that of initial "verification." As we explained in our recent unpublished decision in *Nickoli v. State*,[4] this term connotes at least a minimal confirmation of the reliability of the hearsay statement.

Nickoli was charged with sexual abuse of a minor.[5] At sentencing, the child's guardian ad litem alleged previously undisclosed abuse by "men in [the child's] home on an ongoing basis."[6] The judge overruled defense counsel's hearsay objection to this allegation and subsequently enhanced Nickoli's sentence because "it appears [sexual abuse by Nickoli] has happened before."[7]

We reversed Nickoli's sentence, noting that hearsay allegations at sentencing must rise to a minimal threshold level of corroboration or substantiation:

> In *Nukapigak v. State*, our Supreme Court held that a sentencing judge is entitled to consider hearsay allegations of past bad behavior provided that the information is verified and the defendant is given the opportunity to deny it or present contrary evidence of his own. The court defined "verified" to mean "corroborated or substantiated by

---

[3]   *Id.*

[4]   2014 WL 7005579 (Alaska App. Dec. 10, 2014) (unpublished).

[5]   *Id.* at *1.

[6]   *Id.* at *2.

[7]   *Id.* at **2-3.

supporting data of information." The court further noted that "a bare accusation or the mere fact of an arrest is not sufficient to support a conclusion that a defendant has previously engaged in criminal conduct." However, the threshold for verification remains low, and the "supporting data or information" may be contained in the hearsay account itself, provided the account "appears minimally trustworthy."[8]

Since the guardian ad litem in *Nickoli* had offered no credible source of her allegation, and since she had but vaguely referred to "the men" in the child's home, her bare allegation stood unverified. Because the State also offered no corroborating evidence, the judge could not rely on the allegation, even though the defense presented no rebuttal evidence, and certainly no testimonial denial under oath.

*Integration of hearsay challenge procedures and the requirements of Criminal Rule 32.1*

Thus Criminal Rule 32.1 should, as a practical matter, be read in light of the case law regarding "verification." The first procedural step is a defense notice of objection to allegedly unverified hearsay. Such an objection puts the State to its burden of corroboration or substantiation. As explained in *Nukapigak v. State*, "verification" is a term of art connoting a modest burden on the State to minimally corroborate or substantiate the allegation.[9] Verification demonstrates that the allegation is neither unsupported speculation nor mere fiction. Hearsay can be verified by its own internal content, as in the case of a detailed police investigative report.

---

[8]  *Id.* at *3 (citing *Nukapigak v. State*, 562 P.2d 697, 701 (Alaska 1977)) (citations omitted).

[9]  *Nukapigak*, 562 P.2d at 701 n.2.

If a hearsay allegation is sufficiently corroborated or substantiated but the defendant wishes to challenge the allegation, the defense bears the burden of producing evidence, which the State may controvert. The defense may challenge the allegation via a testimonial denial under oath by the defendant, but that is not the only avenue of challenge. The defense may also produce other equivalent evidence, including testimony of other witnesses, testimony at the trial, or expert reports offered at sentencing.[10]

Thus, under Rule 32.1(f)(5), read together with the holding of *Nukapigak*, the court must redact or reject any challenged allegation if 1) the court finds that it rests on unverified hearsay, 2) the court finds the allegation, hearsay or non-hearsay, to be unproven after the defense has met its burden of providing testimonial evidence or its equivalent, or 3) the judge determines that the allegation is not relevant to sentencing or otherwise elects not to rely upon it.[11]

During my *pro tempore* assignment to the Court of Appeals, I have seen these issues arise with surprising frequency. Trial courts are busy institutions, and resolution of challenged allegations can take substantial time. And the rules themselves are not particularly intuitive, especially in light of the treatment afforded hearsay allegations under the holding of *Nukapigak*. But these rules go to the heart of due process fairness at sentencing, and so the effort required to learn them and to apply them routinely, both on the part of judges and of attorneys, seems to me well worth the trouble.

---

[10] *Cleveland v. State*, 258 P.3d 878, 886 (Alaska App. 2011); *see also Davison*, 307 P.3d 1, 4 (Alaska App. 2013).

[11] Alaska R. Crim. P. 32.1(f)(5).